## WHITTEMORE v. WALTER.

1. MALICIOUS PROSECUTION—ADVICE OF PROSECUTING ATTORNEY—CHATTEL MORTGAGE.

In an action for malicious prosecution, in which plaintiff declared against the defendant for wrongfully causing plaintiff's arrest under a criminal charge for fraudulently disposing of hogs mortgaged to plaintiff, the general charge of the court that the advice of counsel, followed in good faith, after a full and fair statement of all the material facts, is a defense to an action for malicious prosecution, though the facts so stated do not justify the advice given, and that if the defendant went to the prosecuting attorney and made a full and fair statement of all the material facts in the case, and the prosecuting attorney advised him that he had a right to make complaint against plaintiff for disposing of the chattel mortgage property under the statute, and defendant, in good faith, followed the advice of counsel, that would be an absolute defense, but it would not be such defense if the statement was not full and fair, the court sufficiently covered a request that in placing the facts before the prosecuting attorney defendant was not required to be the judge of what was material and necessary and was only required to state the case as he fairly understood it, etc.

2. SAME—EVIDENCE—INSTRUCTIONS TO JURY.

    It was not error to admit evidence competent for one purpose and incompetent for another under instructions as to extent, the manner and limitations under which it could be considered. And, hence, where it was claimed by plaintiff that he had defendant's permission to sell the hogs in question and apply the proceeds on the chattel mortgage, the testimony was admissible on the question of intent, if not for the purpose of showing a variation in the terms of the mortgage, and the jury were properly instructed to consider it for the one purpose, only.

3. SAME—EVIDENCE—DIRECTED VERDICT.

    *Held,* also, that the trial court did not err in submitting to the jury the claim of plaintiff that he had permission to sell the animals when they became fit to market.

Error to Shiawassee; Miner, J. Submitted June 20, 1916. (Docket No. 46.) Decided September 27, 1916.

Case by Ira H. Whittemore against Lewis Walter for malicious prosecution. Judgment for plaintiff. Defendant brings error. Affirmed.

*A. L. Chandler* and *E. F. Wilson,* for appellant.

*George G. Hunter* and *William M. Smith,* for appellee.

STEERE, J. Plaintiff obtained a verdict and judgment for $200 against defendant in an action for malicious prosecution arising from the latter having made complaint and caused plaintiff's arrest under a criminal charge of fraudulently disposing of five hogs covered by a chattel mortgage he had given defendant, with intent to injure and defraud.

On November 21, 1914, defendant, Walter, who was the tenant on a farm in Saginaw county owned by a Mr. Hoffman, sold to plaintiff, Whittemore, a half interest in certain live stock, tools, hay, grain, ensilage,

etc., located on the Hoffman farm, surrendering to Whittemore possession of the property and premises with the approval of Hoffman who owned the other half of the personal property and accepted plaintiff as tenant in lieu of Walter. The personal property was inventoried, and a purchase price agreed upon between the parties of $1,459 for Walter's half interest, upon which Whittemore then paid $500 down, giving for the deferred balance three notes for $150 each serially payable in four, seven and ten months, and one for $500 payable in twelve months, amounting to $959, secured by a chattel mortgage upon the personal property so purchased, signed by Whittemore and his wife.

Plaintiff claimed and testified that at the time the $500 cash was paid and papers given an estimate was made by Walter as to the amount of ensilage and hay, and conditionally accepted and agreed upon in closing the deal, with the express understanding that the same would be shortly after measured by them, and if the estimate proved too large Whittemore should be credited with the difference, or, if short, the difference should be added to what he owed Walter; that pursuant to this agreement he and Walter, in the presence of Hoffman, who owned the other half, measured the ensilage and hay, finding that they had been overestimated, and it was then and there agreed on that account that there was due Whittemore for the over estimate $41.25, which he in the presence of Hoffman requested, and defendant agreed, should be indorsed on his first note. He also claims, and introduced oral testimony, against objection, that although all the hogs on the place were included with the personal property covered by the chattel mortgage as well as the food for stock then there, it was talked, understood, and expressly agreed between the parties that he had the right to feed the animals with the supply of food on

hand and to sell the hogs when sufficiently aged and properly fattened.

Walter admits that he gave plaintiff the right to feed the ensilage, corn, hay, etc., to the stock, and that it was the understanding he should have the right to sell the stuff then covered by the mortgage when fit for sale "if it was applied on the mortgage," and, while there was nothing said about the hogs, he supposed such right would apply to them when fit to sell. Asked in regard to Whittemore's claimed agreement relative to the $41.25 deduction for hay and ensilage, he answered, "I will say I don't remember of any such thing," and when asked if that was as strong as he would put it, answered, "Yes," positively denying, however, that he ever said it was all right and he would indorse it on the note. Of this Hoffman, who was present when the hay and ensilage were measured, testifies:

"The figures showed that Whittemore had paid $41.25 too much and I mentioned the fact. They seemed to agree to that, and Mr. Walter pulled out his pocketbook, saying: 'I will pay you now,' to which Mr. Whittemore replied, 'No; indorse that on the first note. I have got five hogs here in the fattening pen. They will be ready to go soon, and when they are ready, I will take them away, and it will save me hunting you up.'"

Included amongst the hogs listed in the chattel mortgage were "eight black and white shoats six months old." In December plaintiff sold five of these shoats for $66.96, paying $33.48 to Hoffman, who owned the half interest in them, but kept the other half of the money received, telling Walter, however, that he had sold them.

Whittemore claimed that after taking possession of the premises he discovered several things were not as represented; that a mare included in the sale at $150,

and warranted by Walter as sound, proved unsound, and that the ages of other horses had been misrepresented to him; also that a large hog included in the sale was taken away to the butcher by Walter, and not accounted for. He made complaint of this, and some friction arose between the parties, with claims and counterclaims between them the details of which need not be gone over here, and on January 7, 1915, defendant wrote Whittemore demanding the money he had sold the hogs for, concluding:

"Now, if you want to save trouble you had better attend the same."

On January 27, 1915, Walter, having obtained from the prosecuting attorney of Saginaw county an order for a warrant, swore to a complaint before a justice of the peace of said county charging Whittemore with having in December, 1914, sold five hogs of the value of $66.95 covered by a chattel mortgage given by him to complainant, "fraudulently disposing of the same, with intent to injure and defraud the said Lewis Walter out of the value of the same within the meaning of section 11619, 3 Comp. Laws (3 Comp. Laws 1915, § 15383)," etc. On this complaint a criminal warrant was placed in the hands of the sheriff of Saginaw county, who went to the Hoffman farm and arrested Whittemore, taking him to Saginaw, where he was detained in jail for a short time. From the jail he communicated with counsel over the phone and arranged for bail, after which he was taken before the justice and released on bail in the sum of $1,000 for his subsequent appearance, on February 4, 1915; Hoffman, who was owner of the farm and supervisor of the township where it was located, going upon his bond.

At this time all the property covered by the chattel mortgage except the five hogs was on the farm where Whittemore resided, none of the notes given by him

193 Mich.—24.

for deferred payments were due, and the $41.25 for which he claimed an agreed credit should have been indorsed on the first note given amounted to more than he had received for his half of the hogs sold. On February 4, 1915, the day set for examination, the prosecuting attorney of Saginaw county directed that said case be nolle prossed, and plaintiff was thereupon discharged from custody without preliminary examination or trial.

Defendant's various assignments of error include refusal of the court to direct a verdict for the defense, numerous alleged errors in the admission and rejection of testimony, denial of certain requests to charge, and erroneous instructions in the charge as given.

Early in his charge the court concisely advised the jury that to recover plaintiff must establish by a preponderance of evidence:

"*First.* That the prosecution was begun and came to a legal termination in plaintiff's favor.

"*Second.* That defendant instituted the prosecution without probable cause.

"*Third.* That in doing it, he was actuated by malicious motives."

The first proposition was undisputed, and the remaining two involved the issues of fact for their consideration. These propositions were plainly repeated and elaborated in subsequent portions of the charge directing the attention of the jury to and emphasizing just what questions were for them to decide.

It is strenuously contended that defendant acted in good faith under advice of the prosecuting attorney after laying the facts of the case before him and the court committed reversible error in not giving the following request:

"In placing the facts before the prosecuting attorney for his action and advice, Lewis Walter was not required to be the judge of what was material and

necessary to be stated and was required only to state the case as he fairly understood it, and if he did this and fairly and truthfully answered the questions asked by the prosecuting attorney, and then took such course in the matter as the prosecuting attorney advised, then defendant was not guilty of malicious prosecution." ·

Defendant's testimony on direct examination was, in outline, that he truthfully stated the facts of the case to the prosecutor, answered all questions asked, and submitted the matter to him; that the prosecutor whose directions he followed gave him an order for a warrant; that when he made the complaint he honestly believed Whittemore had committed the offense charged, had no intent to hurt him, and only wanted the "security left good," later consenting to let it drop when told by the prosecuting attorney Whittemore admitted he had no right to sell the property, and would not sell any more. On cross-examination he admitted that he did not disclose to the prosecuting attorney their differences touching the amount of hay, ensilage, etc., the large hog, the warranty of the horses, the $41.25 or other matters under which Whittemore claimed the right to sell the five hogs and retain the proceeds. Of this interview and advice given by him the prosecuting attorney testified, amongst other things:

"I asked him whether there had been any deals or arrangements between them so that their relations had been changed at all from what it was when the chattel mortgage was made out, and he said there had not been; the chattel mortgage was still in effect as it was. * * * And I stated to Mr. Walter that if what he had told me was the fact, that these hogs were covered by this chattel mortgage, and this man had sold them without permission and had kept the money, that that was an offense under the law, and that I would give him an order for a warrant under that statement of facts, and I wrote out the order there on the table and handed it to Mr. Walter and told him where the justice's court was."

Upon this branch of the case the court told the jury, in part:

"You have heard the version of that conversation given by the defendant and by the prosecuting attorney. That was given for two purposes: For the purpose of showing whether the defendant at the time he made the complaint was actuated by malice; and whether or not he was governed in the matter entirely by the advice and counsel of the prosecuting attorney. So in this case I charge you that the advice of counsel followed in good faith after a full and fair statement of all the material facts in the case is a defense to an action for malicious prosecution, though the facts as stated to counsel do not justify the advice given. * * * If you find in this case that the defendant went to the prosecuting attorney of Saginaw county, and made a full and fair statement of all the material facts in the case, and the prosecuting attorney advised him that he had a right to make a complaint against the plaintiff here for disposing of chattel mortgage property, under the statute, and plaintiff (defendant) in good faith followed that advice and counsel, then that would be an absolute defense, but if you should find in this case that the defendant did not make a full and fair statement of all the material facts in the case to the prosecuting attorney, then that would not be a defense."

We think the subject was fairly and sufficiently covered by the general charge. *Peterson* v. *Toner,* 80 Mich. 350 (45 N. W. 346); *Webster* v. *Fowler,* 89 Mich. 303 (50 N. W. 1074); *Harris* v. *Woodford,* 98 Mich. 147 (57 N. W. 96).

Several of defendant's assignments of error relate to a line of testimony admitted in which Whittemore and his wife testified to an understanding and agreement between the parties prior to and at the time of the execution of the chattel mortgage that the hogs could be sold by Whittemore whenever fattened and in proper condition for market. All such testimony was earnestly objected to as in violation of the pri-

mary rule that parol evidence is not admissible to vary the plain provisions of a written instrument. In offering this evidence plaintiff's counsel admitted its incompetency to vary the terms of the chattel mortgage, and expressly stated its purpose was to negative criminal intent or purpose on the part of Whittemore to injure or defraud defendant. The court admitted it for that purpose, and instructed the jury in relation to it:

"If he had wanted to dispose of any of the property, it was his legal duty to have obtained the written consent of the defendant in this case; but you remember that in this case there was some evidence given upon the part of the plaintiff and his wife of some talk about disposing of the property previous to the signing of the contract. That evidence was not permitted for the purpose of showing that the plaintiff here had the right to dispose of the property, but for the purpose of showing the understanding of the persons at the time. If the plaintiff in this case, at that time, after he had signed that, honestly believed that he had the right to dispose of those hogs without the written consent of the defendant, then, if he disposed of them, he would not be guilty of having fraudulently disposed of them."

It is an elementary rule that evidence competent for one purpose and incompetent for another should be admitted and in jury cases instruction given in what manner, to what extent, and for what purpose only it may be taken into consideration. The bare fact that plaintiff sold the five hogs covered by the mortgage as shown and admitted, while perhaps raising a presumption, was by no means conclusive of his guilt. The criminal gist of the offense was that in doing so he intended to injure or defraud defendant. Even if this testimony by plaintiff were incompetent, defendant's own testimony on the same subject would tend to relieve its admission of serious importance, for he testified also to an understanding that plaintiff "was to have the right to sell the stuff that was there, that

was covered, when it was fit for sale * * * if it was applied upon the mortgage," and later, after testifying that nothing was said about the hogs, in reply to the question,

"*Q.* It was your idea, if he sold these hogs or any other property like that, I don't mean tools, but I mean the hogs and the calves, if they were fit for market, that he would have the right to sell them providing he would come and bring the money and apply it on the notes,"

answered, "The hogs is all." His indicated grievance appears to have been not that plaintiff sold the five hogs, but that the proceeds from their sale were not applied upon the mortgage, while Whittemore's claim is that such application was, in effect, made under their agreement that in lieu of the same the $41.25 due him from defendant should be credited on the first of the notes which the mortgage secured, which defendant denied. This presented a material and important issue of fact.

If plaintiff's claim was false, the jury might well find that there was probable cause to believe that he sold these hogs covered by the mortgage and kept the proceeds with a fraudulent intent under the statute to injure and defraud defendant, fully justifying the latter in swearing out a criminal warrant against him, while, if it was true, they could with propriety find that no reasonable grounds existed for such belief, and defendant was moved to such course by some ulterior motive, actuated only by ill will or malice. With such a material issue of fact presented by the testimony it seems unnecessary to further discuss the contention that a verdict should have been directed for defendant.

We find no reversible error in the admission or rejection of testimony upon the issues of this case as outlined by the record, from which the pleadings have been omitted, and are led to the conclusion that the

court in a fair and logical charge clearly explained to the jury the well-settled principles of law applicable to the controversy, and plainly directed their attention to the material questions of fact submitted for their determination, with alternate rulings adapted to their permissible action in deciding the disputed facts.

We find no reason for disturbing the result, and the judgment will stand affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.