## TUTTON v. OLSEN & EBANN.

1. MALICIOUS PROSECUTION—FACTS TO BE SHOWN TO MAINTAIN ACTION.

> To maintain action for malicious prosecution, there must be established: (1) Fact of alleged prosecution and that it has come to legal termination in plaintiff's favor; (2) that defendant had no probable cause; (3) that defendant acted from malicious motives.

2. SAME—PROBABLE CAUSE QUESTION FOR COURT WHERE FACTS NOT DISPUTED.

> It is duty of court to decide question of probable cause for prosecution where facts are not in dispute.

3. SAME—PROBABLE CAUSE JURY QUESTION.

> Question of defendants' probable cause for procuring plaintiff's arrest under section 1, Act No. 179, Pub. Acts 1927, on charge of intent to defraud in connection with ring purchased on conditional sale contract was properly submitted to jury where facts were in dispute.

4. SAME—MALICE—EVIDENCE.

> Evidence as to complaints made by defendants against other customers in similar manner was properly admitted in action for malicious prosecution.

5. SAME—PURPOSE OF ARREST MAY BE CONSIDERED BY JURY.

> Purpose of store's credit manager in making complaint against plaintiff charging intent to defraud in connection with ring purchased on conditional sale contract was proper to be considered by jury on question of malice.

6. SAME—VERDICT AGAINST CORPORATION SHOULD INCLUDE AGENT CAUSING ARREST.

> Where, in action for malicious prosecution against corporation and its credit manager, it appeared that latter was responsible

On the question as to whether probable cause is for the court or jury in action for malicious prosecution, see annotation in L. R. A. 1915D, 1.

As to excessiveness of damages in actions for malicious prosecution, see annotation in 40 A. L. R. 317; 47 A. L. R. 313.

for plaintiff's arrest, court properly advised jury that verdict against corporation should also be against credit manager.

7. CORPORATIONS—ACT ONLY THROUGH AGENTS.
   Corporation can act only through its officials and agents.

8. MALICIOUS PROSECUTION—MASTER AND SERVANT—SCOPE OF EMPLOYMENT.
   It cannot be said that corporation's credit manager was not acting within scope of his employment in causing plaintiff's arrest on charge of intent to defraud in connection with ring purchased on conditional sale contract, where it appears that he sought to enforce a number of other similar claims in like manner, and in those cases settled in justice's court checks were drawn in favor of corporation.

9. SAME—CORPORATIONS—MALICE.
   Malice of corporation consists in motives which prompt action of its representatives.

10. SAME—DAMAGES.
    Damages for malicious prosecution may embrace plaintiff's expense in protecting himself, his loss of time, deprivation of liberty and society of family, injury to his fame, and personal mortification.

11. SAME—EXCESSIVE VERDICT.
    Verdict of $500 for malicious prosecution cannot be said to be excessive, where plaintiff obligated himself to pay attorney $100 for defending him, although he had been arrested several times theretofore, and did not bear good reputation in community in which he lived.

Error to Berrien; White (Charles E.), J. Submitted June 6, 1930. (Docket No. 47, Calendar No. 35,051.) Decided October 3, 1930.

Case by Edward J. Tutton against Olsen & Ebann, an Illinois corporation, and James Wheeler for malicious prosecution. From judgment for plaintiff, defendants bring error. Affirmed.

*Charles W. Gore,* for plaintiff.

*John J. Sterling,* for defendants.

SHARPE, J. The defendant Olsen & Ebann, an Illinois corporation, wholesale and retail jewelers in Chicago, operated a branch store in Benton Harbor. The plaintiff, a married man, engaged in the plumbing business, purchased a ring at this store in 1921 on a conditional sale contract. The price was $75. He made a down payment of $5, and agreed to pay $3 bi-monthly. On January 26, 1925, he made a payment of $2, leaving $25 then unpaid. The defendant Wheeler entered the employ of the corporation as credit manager of this store on November 1, 1928. He made unsuccessful efforts to secure the balance due from plaintiff. On January 29, 1929, he made a written complaint to Elizabeth H. Forhan, a justice of the peace, charging plaintiff with a violation of section 1 of Act No. 179, Pub. Acts 1927, which reads as follows:

"Any person who shall embezzle, fraudulently remove, conceal or dispose of any personal property held by him subject to any chattel mortgage or written instrument intended to operate as a chattel mortgage, or any lease or written instrument intended to operate as a lease, or any contract to purchase not yet fulfilled with intent to injure or defraud the mortgagee, lessor, or vendor thereof," etc.

A warrant was issued, under which plaintiff was arrested. He gave bond for his appearance, and, after an examination, was bound over to the circuit court, where the charge was dismissed for lack of evidence before the justice on which to hold him for trial. He soon thereafter began this suit for malicious prosecution. He had verdict and judgment against both defendants in the sum of $500, of which review is sought by writ of error.

As was said in *Weiden* v. *Weiden,* 246 Mich. 347, 352:

"In actions for malicious prosecution three propositions must be established: (1) The fact of the alleged prosecution and that it has come to a legal termination in plaintiff's favor; (2) that the defendant had no probable cause; (3) that he acted from malicious motives."

The first of these was clearly established. The second was submitted to the jury. When the facts are not in dispute, it is the duty of the court to decide it. The plaintiff testified that, in the only interview he had with the defendant Wheeler, the following occurred:

"As soon as I got in the store I think Mr. Wheeler was busy and I waited a few moments and I asked if it was him and he said 'yes, that is me' and he said 'just step into my office' so I stepped in there and said, 'Well, what is it?' and he said, 'You owe a little bill for a ring.' I said, 'Yes, I realize I do.' He says, 'Well, what do you intend to do about it?' I said, 'I intend to pay for it' and some other little conversation came up and I said, 'Right away as soon as I possibly can, just before Christmas and my collections are bad,' and I said just before Christmas, it is hard for me to collect money because everybody wanted their money for Christmas and after that they have spent it all and it is pretty difficult this time of year. Well, we were talking and he said, 'You know I have got one fellow I put in jail over here and kept him in jail over Thanksgiving and he had five or six kids over here.' 'Of course,' he says, 'I don't even have to let you get up out of this room, I don't have to let you get out of that chair, I could take that ring away from you.' I thought he was getting hostile and I kept still so we talked along and I said, 'I will pay for it as soon

as. I can and will try and make arrangements to get the money for you,' and when I left we were good natured; I told him I would be in just as soon as I could and shook hands with him and went out."

And further:

"He never demanded the ring from me.    *    *    * The ring has always been in my possession."

Wheeler testified that he did demand the ring, and that plaintiff refused to deliver it to him. This dispute in the facts necessitated the submission of the question to the jury. *Thomas* v. *Bush,* 200 Mich. 224.

But it is urged that Wheeler acted upon the advice of the justice of the peace and the prosecuting attorney. The record discloses that between November 6, 1928, and December 31, 1928, Wheeler had made 15 similar complaints, on which warrants were issued, none of which had been prosecuted to judgment. This evidence was admitted over defendants' objection. Wheeler as a witness testified:

"*Q.* You have issued warrants against people generally and promiscuously for this company since November, approximately 25 at least, haven't you?

"*A.* Yes. I haven't collected from all of those cases that were commenced. A great many of them have been dismissed, but not by settling with me or paying cash. I haven't settled any of the cases directly. A good many of them I dismissed without getting a cent. The people told me their circumstances and I dismissed them. In a good many cases I made a new contract so the statute of limitations wouldn't run and the claim outlaw.

"*Q.* In how many cases, if you know, have you issued or caused the arrest of people and settled the cases by the payment of the balance or the return of the property?

"*A.*  I don't know.

"*Q.*  Have you ever prosecuted a case to sentence or final conclusion?

"*A.*  No.

"*Q.*  The only purpose that you issued these warrants was collecting the money, is that not a fact?

"*A.*  Well, no and yes.  Primarily I was for the money.

"*Q.*  Primarily you were interested in getting the money and primarily you weren't interested in vindicating the law—that is correct—it necessarily follows.

"*A.*  I told Mr. Cunningham—

"*Q.*  Now wait a minute—you said primarily you were interested in getting the money?

"*A.*  Yes, sir."

It also appears that he had been advised by the then prosecuting attorney, George Bookwalter, that "He would have no right to issue those warrants." It is his claim that when he made the complaint against the plaintiff the justice called up the then prosecutor, Wilbur M. Cunningham, and was instructed by him to issue the warrant.  It may be observed that the justice testified that Wheeler stated to her that he had made demand on plaintiff for the ring and he had refused to deliver it to him.

In *Hall* v. *American Investment Co.*, 241 Mich. 349, a case very similar to that under consideration, the agent of the defendant company testified on cross-examination:

"*Q.*  You had him arrested to get the automobile or the money?

"*A.*  I had him arrested to get the automobile because we could not get the money.

"*Q.*  Either one or the other?

"*A.*  Because I could not get the money.  I had him arrested because I could not get the automobile or get the money; yes, sir.

"*Q.* Then your purpose in instituting this criminal prosecution was to recover that automobile or to get the money?'

"*A.* Recover possession of that automobile because the money was not forthcoming."

It was there said:

"By his own admission Brighton's motive in procuring the arrest of plaintiff was to regain possession of the automobile. If one makes use of the criminal law for some collateral or private purpose, such as to compel the delivery of property or payment of a debt rather than to vindicate the law, he is guilty of a misuse of process and a fraud upon the law. His employment of the criminal law to obtain return of the automobile was effective to deprive defendant of the defense of advice of counsel and constituted strong if not conclusive proof of malice."

We find no error in the admission of the proof of other complaints made by Wheeler, and in our opinion there was no error in the submission of the question of probable cause to the jury.

We have carefully examined the charge on the question of malice, and find no ground for complaint by the defendants. The purpose of Wheeler in making the complaint might surely be considered by the jury.

When the jury returned into court to deliver their verdict, the following occurred:

"*The Foreman:* We find against Olsen & Ebann for $500.

"*The Court:* I think inasmuch as you found against Olsen & Ebann the jury should also return a verdict against the other defendant.

"*Foreman of the Jury:* We were undecided whether that was necessary.

*"The Court:* If you find against Olsen & Ebann, the judgment in my opinion, under the law, should also be against the defendant, Wheeler.

*"Foreman of the Jury:* I think the jury is a unit, if that is necessary."

Whereupon the jury again retired and later returned with a verdict against both defendants in the sum of $500.

The verdict first announced was certainly an inconsistent one. The officials of the corporation had nothing to do with the criminal proceeding, and it could only be liable if Wheeler was. We think it was the duty of the court to do just what he did. Had the verdict been received and entered as first announced, the court would have been in duty bound to set it aside.

Was the corporation liable? Under the charge such liability attached if Wheeler was acting within the scope of his authority in making the complaint. In *Hall* v. *American Investment Co., supra,* the complaint was made by the agent of the corporation whose duty it was to collect the installments on the contract. A judgment against the corporation was sustained. It does not, however, appear that the liability of the corporation was questioned.

A corporation can but act through its officials and agents. The defendant corporation had a manager of its business at Benton Harbor. The moneys received by the justice on the settlement of other cases, after deducting the fees, were paid by a check drawn in favor of the corporation and sent to its office in Benton Harbor. The manager, although called as a witness, was not asked concerning his knowledge that these complaints were made by Wheeler for the purpose stated by him. Had the complaint against the plaintiff been the only one made, there

would be more force in this contention. In view of the manner in which Wheeler sought to enforce collection of this and other similar claims, we do not think it can be fairly said that he was not acting within the scope of his employment. See *Cascarella* v. *National Grocer Co.*, 151 Mich. 15, and authorities there cited. And "The malice of the corporation consists in the motives which prompt the action of its representatives." 7 R. C. L. p. 684.

Was the verdict excessive? The plaintiff had been theretofore arrested several times. He did not bear a good reputation in the community in which he lived. In *Hamilton* v. *Smith*, 39 Mich. 222, it was said (syllabus):

"Damages for malicious prosecution may embrace the plaintiff's expense in protecting himself, his loss of time, deprivation of liberty and the society of his family, the injury to his fame and his personal mortification."

Plaintiff testified that he had obligated himself to pay $100 to an attorney for defending him, of which he had paid $83.

Applying this rule to the facts presented, we cannot say that the verdict is excessive.

The conclusion reached renders it unnecessary to discuss plaintiff's motion to dismiss the writ of error, and it is denied.

The judgment is affirmed.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.