RIVERS v EX-CELL-O CORPORATION

Docket Nos. 44579, 45303. Submitted June 13, 1980, at Detroit.—
Decided October 22, 1980. Leave to appeal applied for.

The auditor and corporate counsel of Ex-Cell-O Corporation re-
ported to the Wayne County Prosecutor that Donald Rivers,
manager of office services for the corporation, had embezzled
some $100,000 worth of postage stamps over a four-year period.
Following an investigation by the prosecutor's office, Rivers was
charged with embezzlement and bound over for trial. Wayne
Circuit Judge Charles Kaufman quashed the information for
lack of proof that a crime had been committed. Donald Rivers
and his wife, Carolyn, filed a complaint seeking damages from

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur 2d, Malicious Prosecutions §§ 1, 6-8.
Necessity and sufficiency of allegations in complaint for malicious
prosecutions or tort actions analogous thereto that defendant or
defendants acted without probably cause. 14 ALR2d 264.

[2] 52 Am Jur 2d, Malicious Prosecution §§ 23-28.

[3] 52 Am Jur 2d, Malicious Prosecution §§ 24, 192, 193.

[4] 52 Am Jur 2d, Malicious Prosecution § 184.
75 Am Jur 2d, Trial § 321.

[5] 52 Am Jur 2d, Malicious Prosecutions §§ 136, 137, 142.
75 Am Jur 2d, Trial § 321.

[6] 52 Am Jur 2d, Malicious Prosecutions §§ 141, 142, 152, 153.

[7] 29 Am Jur 2d, Evidence §§ 327, 330.
81 Am Jur 2d, Witnesses § 577.
Right to impeach credibility of accused by showing prior conviction,
as affected by remoteness in time of prior offense. 67 ALR3d 824.

[8] 29 Am Jur 2d, Evidence §§ 249-257, 260, 493-496.

[9] 29 Am Jur 2d, Evidence §§ 296, 831.
Modern status of rule relating to admissions of results of lie
detector (polygraph) test in federal criminal trials. 43 ALR Fed
68.

[10] 52 Am Jur 2d, Malicious Prosecution § 186.

[11, 12] 22 Am Jur 2d, Damages §§ 267, 268.
52 Am Jur 2d, Malicious Prosecution §§ 93, 94, 97, 104.
Actual damages as a necessary predicate of punitive or exemplary
damages. 17 ALR2d 527.
Relation of actual to exemplary damages for malicious prosecution.
35 ALR2d 313.

Ex-Cell-O for malicious prosecution and loss of consortium. At the trial in Wayne Circuit Court, Robert J. Colombo, J., evidence was presented which showed that Ex-Cell-O had failed to inform the prosecutor of its internal audit investigation which was critical of the accounting procedures which gave rise to the belief that Rivers had appropriated the stamps for his own use and had failed to confront Rivers before taking the matter to the prosecutor. The jury returned verdicts in favor of plaintiffs: $450,000 with respect to Donald Rivers' claims and $50,000 with respect to Carolyn Rivers' claims. Defendant appeals, challenging the sufficiency of the evidence, various evidentiary rulings and the instructions to the jury. Plaintiffs filed a separate appeal challenging the failure of the trial court to treble the jury's verdict pursuant to statute. The appeals were consolidated for consideration. *Held:*

1. The elements of malicious prosecution are: 1) a criminal prosecution instituted or continued by the defendant against the plaintiff, 2) termination of the proceedings in favor of the accused, 3) absence of probable cause for the proceeding, and 4) malice or a primary purpose other than bringing the offender to justice.

2. Since the criminal proceedings against plaintiff were brought by the prosecuting attorney, the element of institution or continuation of proceedings by the defendant are established only if it is shown that the defendant failed to make a full and fair disclosure of all the material facts known by it to the prosecuting attorney. Plaintiff's proofs, if believed by the jury, established that the defendant failed to disclose to the prosecuting attorney exculpatory information which might have dissuaded the prosecuting attorney from proceeding against plaintiff; accordingly, a jury question as to whether there had been a full and fair disclosure by the defendant was presented.

3. There being a factual dispute relative to the actions taken by the defendant, a question of fact for jury determination existed relative to the element of want of probable cause. Since the jury could have found from the proofs presented that the defendant failed to act in a prudent manner in its internal investigation by failing to confront plaintiff with its suspicions, by failing to pursue numerous leads which might have convinced it of plaintiff's innocence, and by failing to have considered the inherent unlikeliness that plaintiff would steal $100,-000 in postage stamps where there is no hint that he could have converted them to cash or otherwise use them improperly, the trial court properly denied defendant's motion for a di-

rected verdict, there being sufficient proofs to establish want of probable cause.

4. The element of malice could be properly inferred from a finding of want of probable cause. Further, malice could also have been inferred by the jury from the proofs that the primary objective of defendant in pursuing prosecution of plaintiff was to secure payment from a bonding company, defendant's counsel perceiving that the bonding company would be more likely to honor defendant's claim on the bond if plaintiff was prosecuted and convicted of the theft of the stamps.

5. The trial court properly refused to permit defendant's using evidence of plaintiff's 1968 conviction for larceny under $100 in the 1979 trial of this matter. The ten-year limitation contained in the Michigan Rules of Evidence relative to the use of prior convictions for impeachment purposes refers to the period between the date of conviction or release from custody and the date of trial, not between the date of conviction or release and the date of commencement of the action.

6. Evidence of plaintiff's refusal to take a polygraph examination was properly held to be inadmissible, since to permit such evidence would subvert the public policy established by the Legislature that polygraph examinations shall not be a condition for continuation of employment or a change in status of employment.

7. The charge to the jury that actionable liability for malicious prosecution exists if the defendant failed to make a full and fair disclosure of all material facts was proper. A failure to disclose all material facts, even if that failure resulted from a good faith omission by the defendant, is all that is necessary to establish that element of a malicious prosecution action. A good faith omission of material facts does not go to the full and fair disclosure element, but, rather, a good faith omission is properly considered a part of the malice element.

8. Charging the jury that the factors that might be considered in fixing damages included "mental anguish, denial of social pleasure and enjoyments, embarrassment, humiliation, and mortification" did not place the question of exemplary damages before the jury. Accordingly, the jury verdict in favor of plaintiff Donald Rivers should be trebled in accordance with the malicious prosecution statute. The judgment must therefore be modified by trebling the jury's award to Donald Rivers. The jury verdict in favor of Carolyn Rivers is not to be trebled, since she does not fall within the scope of the trebling provisions of the statute.

Affirmed as modified.

BASHARA, P.J., concurred in part and dissented in part. He concurs with the majority in all respects except as to the trebling of the jury's verdict in favor of Donald Rivers. He would hold that the charge to the jury placed the question of exemplary damages before the jury, and, accordingly, the jury's verdict should not be trebled under the statute, plaintiffs having elected to submit the question of exemplary damages to the jury rather than seeking the benefit of the statute. He would affirm the trial court's judgment.

OPINION OF THE COURT

1. MALICIOUS PROSECUTION — ELEMENTS.

The elements of malicious prosecution are 1) a criminal proceeding instituted or continued by the defendant against the plaintiff, 2) termination of the proceeding in favor of the accused, 3) absence of probable cause for the proceeding, and 4) malice or a primary purpose other than that of bringing the offender to justice.

2. MALICIOUS PROSECUTION — DISCLOSURE OF FACTS — PROSECUTING ATTORNEY — INSTITUTION OF CRIMINAL PROCEEDINGS.

A recovery for malicious prosecution does not exist against one who has made a full and fair disclosure of all the material facts known by him to a prosecuting attorney, even where the prosecuting attorney thereafter recommends a warrant, since such person, under those circumstances, has not instituted a criminal proceeding.

3. MALICIOUS PROSECUTION — DIRECTED VERDICT — DISCLOSURE OF FACTS — JURY QUESTION.

A directed verdict in favor of a malicious prosecution defendant is properly denied where the proofs show that the corporate defendant failed to disclose to the prosecuting attorney exculpatory information which might have dissuaded the prosecuting attorney from seeking a warrant against the malicious prosecuting plaintiff, since, under those proofs, a jury question was presented.

4. MALICIOUS PROSECUTION — WANT OF PROBABLE CAUSE — JURY QUESTION.

The element of want of probable cause in a malicious prosecution action is a jury question if the facts are in dispute.

5. MALICIOUS PROSECUTION — WANT OF PROBABLE CAUSE — JURY QUESTION — SUFFICIENCY OF EVIDENCE.

The want of probable cause necessary to support an action for

malicious prosecution could properly be found by a jury where the proofs showed that a corporate defendant's agents failed to act in a prudent manner in their internal investigation of the plaintiff by having failed to confront the plaintiff, to pursue numerous leads which might have convinced them of the plaintiff's innocence, and to have considered the inherent unlikeliness that an individual would steal $100,000 worth of postage stamps where there is no hint of how they could be converted to cash or otherwise used improperly.

6. MALICIOUS PROSECUTION — MALICE — PERMISSIBLE INFERENCE.

The malice necessary to sustain an action for malicious prosecution may be inferred from a finding of lack of probable cause; malice may also be inferred where the jury could have found that the defendant's primary motive in pursuing a prosecution was to secure payment from a bonding company on a claim arising out of the alleged theft which gave rise to the malicious prosecution action.

7. EVIDENCE — ADMISSIBILITY OF EVIDENCE — IMPEACHMENT — PRIOR CONVICTIONS — RULES OF EVIDENCE.

The ten-year limitation relative to the admissibility of evidence of prior convictions for impeachment purposes as contained in the Michigan Rules of Evidence, as applied to civil actions, refers to the period between the date of convictions or release from custody and the date of trial, even if the action was commenced within the ten-year period (MRE 609[b]).

8. EVIDENCE — HEARSAY — MISLEADING THE JURY — RULES OF EVIDENCE.

Testimony which is technically not hearsay because it is not being offered for the truth of the matter asserted nevertheless may be excluded from evidence where the trial court determines that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury (MRE 403).

9. EVIDENCE — POLYGRAPH EXAMINATION — REFUSAL TO TAKE POLYGRAPH EXAMINATION — STATUTES.

Evidence of the refusal of an employee to take a polygraph examination is not admissible at the trial of a malicious prosecution action brought by the employee against his employer, since to permit such evidence would subvert the legislative policy that polygraph examinations shall not be a condition for continuation of employment or a change in status of employment (MCL 37.2205a[2]; MSA 3.548[205a][2]).

10. MALICIOUS PROSECUTION — JURY INSTRUCTIONS — FULL AND FAIR
DISCLOSURE — GOOD FAITH.

Charging a jury in a malicious prosecution action that the defense of full and fair disclosure is not available to one who failed to disclose to the prosecutor all the facts, including those which exculpated the plaintiff, is proper, since the defense of full and fair disclosure is not established where the failure to disclose all material facts is the result of a good faith omission on the part of the defendant.

11. DAMAGES — MALICIOUS PROSECUTION — TREBLE DAMAGES —
ACTUAL DAMAGES — EXEMPLARY DAMAGES — STATUTES.

A jury award in a malicious prosecution action should be trebled in accordance with the statutory provisions even though the instruction to the jury included as elements damages for mental anguish, denial of social pleasures and enjoyments, embarrassment, humiliation and mortification, since those elements of damages are elements of actual rather than exemplary damages; a spouse's award for loss of consortium resulting from the malicious prosecution may not be trebled because the statute only provides for the trebling of the award to the "person so arrested, attached or proceeded against" (MCL 600.2907; MSA 27A.2907).

DISSENT BY BASHARA, P.J.

12. DAMAGES — MALICIOUS PROSECUTION — EXEMPLARY DAMAGES —
JURY INSTRUCTIONS — TREBLE DAMAGES — STATUTES.

*Damages in a malicious prosecution action for "mental anguish, denial of social pleasure and enjoyments, embarrassment, humiliation or mortification" are a form of exemplary damages for hurt feelings; accordingly, a jury instruction for such damages constitutes an election by the plaintiff to have the jury decide exemplary damages rather than having the jury's award trebled pursuant to the statute (MCL 600.2907; MSA 27A.2907).*

*William J. Heaphy,* for plaintiffs.

*Joselyn, Rowe, Jamieson & Grinnan, P.C.,* for defendant.

Before: BASHARA, P.J., and D. C. RILEY and E. A. QUINNELL,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

E. A. QUINNELL, J. In December, 1972, defendant's auditor and corporate counsel reported to the Wayne County Prosecutor's Office that plaintiff Donald Rivers, who at that time was defendant's manager of office services, had embezzled some $100,000 worth of postage stamps over a four-year period. Plaintiff was charged and bound over for trial. However, Wayne Circuit Court Judge Charles Kaufman quashed the information for lack of proof that a crime had been committed. Thereafter, plaintiffs filed their complaint alleging malicious prosecution and loss of consortium. Following a trial, plaintiffs, Mr. and Mrs. Rivers, were awarded damages of $450,000 and $50,000 respectively.

Plaintiff Donald Rivers had been manager of office services for defendant since August, 1971. In this capacity, he was responsible for defendant's three mailroom facilities. The company had postage meter machines at each mailroom. Defendant's position was that all but a minimal amount of postage was handled through the machines so that the use of stamps for mailing could not have accounted for the high volume of stamps plaintiff had purchased. Plaintiff, however, contended that he had begun substituting stamps for the meter at one of the facilities in 1969 while he was an assistant to the then manager of office services. He found that the meter in this facility was inadequate because it frequently jammed, employed postage tapes, and was difficult to use for bulky packages.

Defendant's suspicions were first aroused in October, 1972, when a postal employee phoned defendant's traffic manager to leave a message for the man who bought the big rolls of stamps. This was reported to plaintiff's superiors, who were suspi-

cious because of their belief that the company did not use stamps for mailing purposes. Consequently, defendant's auditor authorized an investigation. The investigation disclosed a large number of checks signed by plaintiff with the designation "recharging meter" written on them. However, the dates on these checks did not correlate with the recorded rechargings. A mailroom employee was also given a stack of envelopes and some stamps to ascertain if the stamps could have been used as postage. The mailroom employee applied the stamps by licking them. The investigator concluded from this "test" that plaintiff would have spent nearly all of his time applying stamps if the large amount of stamps were actually used.

Plaintiff was never interviewed during the course of the investigation. During the trial, however, he pointed out that the "test" did not simulate the conditions under which the stamps were actually applied, namely, that he quickly applied large denominations of postage to bulky packages using a wet sponge.

As a result of defendant's investigation, the Wayne County Prosecutor's Organized Crime Task Force became involved in this matter. Defendant also reported a theft loss to its bonding company.

Defendant gave the Task Force a report of its findings. Investigators with the Task Force, working with defendant's employees, conducted a second audit. Plaintiff was interviewed and explained his version of the mail operation, including the fact that the department ran under its postage budget. This was considered insignificant by the investigators and a warrant was issued.

Plaintiff argued that defendant withheld material information which would have dissuaded the Task Force from prosecuting. Plaintiff's case also

made much of the relationship between defendant and its bonding company. The accusation was made that defendant's desire to have plaintiff prosecuted was motivated by its own desire to collect on the bond. Defendant's corporate counsel acknowledged his perception that the bonding company would be more likely to honor the claim if the thief were prosecuted and convicted. In July, 1973, after plaintiff had been bound over for trial, defendant and its bonding company entered an agreement in which the $100,000 claim was paid. The settlement was to become final upon plaintiff's conviction. This settlement would also become final if plaintiff were to be acquitted, but no civil action proved his innocence. If a civil action were to exonerate plaintiff, however, defendant would be required to refund the money.

Defendant appeals from the jury's finding of liability. Plaintiffs appeal from the assessment of damages.

I. *Did Plaintiffs Establish All of the Elements Necessary to Sustain a Malicious Prosecution Action?*

The elements of a cause of action for malicious prosecution are: (1) a criminal prosecution instituted against plaintiff by defendant, terminating in plaintiff's favor, (2) absence of probable cause for the criminal proceeding, and (3) malice or a primary purpose in bringing the action other than bringing the offender to justice. *Weiden v Weiden,* 246 Mich 347, 352; 224 NW 345 (1929), *Ringo v Richardson,* 88 Mich App 684, 689; 278 NW2d 717 (1979), *lv den* 407 Mich 906 (1979).

Defendant first contends that it simply disclosed all material information to the police and prosecutor so that it cannot be held liable for "instituting" the criminal charge. Due to the important

state policy of encouraging citizens to report possible criminal violations within their knowledge, a defendant cannot be held liable for malicious prosecution unless he took some active role in instigating the prosecution. If the defendant, as complainant, has made full and fair disclosure of all of the material facts within his knowledge to the prosecutor, and the prosecuting attorney recommends a warrant, no recovery may be had against said defendant, for under such circumstances the complainant has not "instituted" the charge. *Renda v International Union, UAW,* 366 Mich 58, 83-87; 114 NW2d 343 (1962). *Clanan v Nushzno,* 261 Mich 423, 428-429; 246 NW 168 (1933).

In the case at bar, however, the jury could properly conclude that defendant's agents did not disclose all material facts to the prosecutor. Plaintiff ran under budget in 1972 and close to budget in 1970 and 1971 while allegedly stealing approximately one-third of his postage budget in each of these years. The budgets for the years 1970 through 1972 were in accord with budgets from years in which no thefts occurred. Moreover, adjusting for postal rate increases, postage costs actually decreased from 1970 to 1972. The Task Force discounted the budget compliance as an indication of innocence, based on management representations about the budgeting process. Defendant's agents stated that the plaintiff could have padded the budget to conceal his theft and, also, stated that the budget for any given year was simply based on the previous year's budget. In fact, plaintiff prepared his department's budget only in 1972. Furthermore, all of the budgets from 1970 through 1972 were reviewed by plaintiff's superiors.

The most salient factor supporting the jury's

conclusion involves the designation of purpose in the description column of the checks used for stamps. Plaintiff had written on a large number of checks "recharging meter". However, these checks did not correlate with the recorded rechargings. The fact that the checks designated for meter recharging were actually used for the purchase of stamps seemed very incriminating. However, the investigator who conducted the internal audit for the company reported findings critical of the company's accounting procedures in a memo to a corporate vice-president. This memo was not divulged to the Task Force. Moreover, plaintiff offered competent evidence, including the testimony of the corporate treasurer, which showed widespread disregard of the designation of purpose throughout the corporation.

Where a business fails to disclose information which provides exculpatory explanations for the alleged irregularities, and where this information might dissuade the prosecutor from seeking a warrant, a defendant is not entitled to a directed verdict. Under the evidence presented, fair and full disclosure was a question of fact for the jury. *Clanan, supra.*

Defendant also contends that plaintiff failed to establish the element of want of probable cause. Want of probable cause is a question of fact for the jury if the facts are in dispute. *Taft v J L Hudson Co,* 37 Mich App 692, 695; 195 NW2d 296 (1972), *lv den* 387 Mich 772 (1972). We find ample evidence in the record supporting a finding of lack of probable cause. Defendant's agents never confronted plaintiff with their concerns and, in fact, failed to pursue numerous leads which might have convinced them of plaintiff's innocence. Knowing full well the corporation's accounting procedures and

relying on preconceived notions concerning the amounts of stamps the corporation used, defendant's agents failed to behave in a prudent manner before levying their charges of theft. In quashing the information against plaintiff, the Wayne Circuit Court ruled that there was no evidence from which the basic element of theft—an unlawful taking—could be reasonably inferred. The inherent unlikeliness that an individual would steal $100,000 worth of stamps, without the slightest hint as to how they could be converted to cash or otherwise improperly used, clearly allows a jury to find a want of a probable cause for bringing the charges on the evidence adduced.

As to the element of malice, it may be inferred from a lack of probable cause. Although the inference is not a necessary one, it was one which the jury was entitled to make. *Renda, supra,* 97-100. Beyond this permissible inference, the jury could have found that defendant's primary purpose in instituting the prosecution was to enhance the likelihood that its bonding company would pay the $100,000 claim.

We find that a jury could properly conclude that a malicious prosecution occurred.

II. *Did the Trial Court Err in Precluding Evidence of Plaintiff's Prior Misdemeanor Conviction for Larceny Under $100?*

No error was committed by the trial court's refusal to allow plaintiff's impeachment by evidence of a prior larceny conviction, where said conviction occurred more than ten years prior to trial. MRE 609(b). Plaintiff's conviction occurred in 1968. Defendant contends, however, that since the lawsuit was commenced in January, 1975, plaintiff's credibility was opened within the ten-year period. Trial was not started in this case until

February, 1979. We hold that the time limitation
of MRE 609(b) refers to the period of time between
the date of conviction or release from custody and
the date of trial. See *People v Featherstone,* 93
Mich App 541, 544-545; 286 NW2d 907 (1979).

III. *Did the Trial Court Err in Excluding From
Evidence Certain Statements Made by Defendant's
Employees As Hearsay?*

Defendant's brief cites two instances in which
the trial court allegedly refused to allow proper
testimony on the basis that it was hearsay. The
first instance concerned defendant's effort to elicit
from its traffic manager the content of his conver-
sation with a postal employee from whom plaintiff
purchased a large quantity of stamps. Defendant
argued that it was not offered for the truth of the
matter asserted, but rather, to show what informa-
tion aroused the traffic manager's suspicions.
Thus, the proffered testimony was not technically
hearsay. The trial court determined, however, that
the testimony was too likely to be used for the
improper purpose of proving the truth of the
assertion and, finding the evidence unnecessary,
refused to admit it. We believe the trial court's
ruling did not constitute an abuse of discretion.
MRE 403 provides:

"Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the dan-
ger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue
delay, waste of time, or needless presentation of cumu-
lative evidence."

The other allegation of error concerns the
court's ruling that a police officer could not read
his notes of a conversation with the former office
supplies manager. Defense counsel contended that

these statements showed the information constituting probable cause. The trial court's ruling was correct. If the evidence showed state of mind, then it reflected on the state of mind of the Task Force investigators, which was not relevant to whether defendant had a good faith belief in probable cause. If the evidence showed actual probable cause, then it was indeed offered for the truth of the assertion and was hearsay. MRE 801.

IV. *Did the Trial Court Err in Precluding Evidence That Plaintiff Refused to Submit to a Polygraph Examination During the Investigation of the Charges?*

Results of polygraph examinations are inadmissible. *People v Frechette,* 380 Mich 64, 68; 155 NW2d 830 (1968), *Stone v Earp,* 331 Mich 606, 610; 50 NW2d 172 (1951). It is erroneous to bring to the jury's attention evidence of a refusal to take a polygraph examination. *People v Scotts,* 80 Mich App 1, 11-13; 263 NW2d 272 (1977). We further note that MCL 37.2205a(2); MSA 3.548(205a)(2) now prohibits employers from using polygraph examinations as a "condition of continuation in employment, promotion, or change in status of employment". It would subvert the legislative policy embodied in this statute were we to rule that plaintiff's alleged failure to submit to a polygraph examination should have been allowed into evidence.

V. *Do the Trial Court's Instructions on the Defense of Full and Fair Disclosure to the Prosecutor Require Reversal?*

The trial court instructed:

"While an action for malicious prosecution, members of the jury, cannot be maintained against one who fully and fairly discloses to the prosecuting attorney everything within its knowledge which would tend to cause

or exclude belief in plaintiff's criminality, the defense would not be available if the Ex-Cell-O Corporation failed to disclose all of the facts including those which would exculpate the plaintiff Donald Rivers as well as those which would implicate him in crime."

Defense counsel objected to this instruction on the basis that a good faith presentation of facts established the defense. We disagree. If defendant's agents failed to disclose all material facts, even if the omission of the pertinent facts was done entirely in good faith, the defense of full and fair disclosure has not been established. *Whittemore v Walter,* 193 Mich 365, 370-372; 159 NW 525 (1916). The defense of full and fair disclosure may involve some of the same considerations as those involved in a determination of good faith, but the ultimate question of good faith itself is irrelevant to determination of whether full and fair disclosure has been made.

Defendant's argument misapprehends two potential lines of defense to a malicious prosecution action. An absolute bar to recovery exists if there has been both a full and fair disclosure of all material facts to the prosecuting attorney, for in such event, as previously discussed, defendant has not instituted prosecution. If the omission of material facts was due to inadvertence, negligence, a lack of understanding as to what the law requires or the like, this might rebut the element of malice, but it does not establish an absolute bar to the malicious prosecution action. The jury was properly charged.

VI. *Should the Trial Court Have Trebled the Jury's Damages Awards Pursuant to MCL 600.2907; MSA 27A.2907?*

MCL 600.2907; MSA 27A.2907 provides in relevant part:

"Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him."

Plaintiffs contend that the damages awards in their favor should have been trebled. A plaintiff in a malicious prosecution action must elect to submit the question of exemplary damages to the jury or to have the issue of actual damages only decided by the jury and then to have any damages award trebled pursuant to the statute. *LaLone v Rashid,* 34 Mich App 193, 201; 191 NW2d 98 (1971), *lv den* 386 Mich 756 (1971). In the case at bar, plaintiffs elected to have only the question of actual damages decided by the jury. Defendant, however, argues that the court's instructions, given with plaintiff's approval, which provided that plaintiffs were entitled to damages for "mental anguish, denial of social pleasure and enjoyments, embarassment, humiliation, and mortification", encompassed a form of exemplary damages for hurt feelings. We disagree. We have examined the instructions given by the trial court in *Taft, supra,* which this Court held to present the question of actual damages only, and find them to be indistinguishable from those given in the instant case; the source for both instructions is SJI 30.02(b), (d) and (e). We agree with the *Taft* court that these elements of damages represent actual and not exemplary damages.

"When the law gives an action for willful wrongs, it

does it on the ground that the injured person ought to receive pecuniary amends from the wrong-doer. It assumes that every such wrong brings damage upon the sufferer, and that the principal damage is mental, and not physical. And it assumes further that this is actual, and not metaphysical damage, and deserves compensation." *Welch v Ware,* 32 Mich 77, 84 (1875).

*Tutton v Olsen & Ebann,* 251 Mich 642, 650; 232 NW 399 (1930), quoted from the syllabus of *Hamilton v Smith,* 39 Mich 222, 222-223 (1878), as follows:

" 'Damages for malicious prosecution may embrace the plaintiff's expense in protecting himself, his loss of time, deprivation of liberty and the society of his family, the injury to his fame and his personal mortification.' "

We must concede that the precedential value of *Tutton* and *Hamilton* is weakened by the failure of either Court to discuss the treble damages statute. Nevertheless, we conclude the $450,000 award of plaintiff Donald Rivers represents actual damages and must be trebled. Although distinguishable, *Ross v Leggett,* 61 Mich 445, 450-453; 28 NW 695 (1886), is illuminating.

No trebling of the jury verdict in favor of plaintiff Carolyn Lee Rivers is permissible, however. MCL 600.2907; MSA 27A.2907 is limited by its language to treble damages for a "person so arrested, attached, or proceeded against". Even though Mrs. Rivers' consortium claim ultimately lies because of defendant's malicious prosecution of her husband, the consortium claim represents a different and independent theory of recovery.

Affirmed as modified.

D. C. RILEY, J., concurred.

BASHARA, P.J. *(concurring in part and dissenting in part)*. I concur with the majority's position in Parts I through V of the opinion, however, I disagree with the majority's holding in Part VI that the trial court erred in denying plaintiffs' motion to treble the damage award.

MCL 600.2907; MSA 27A.2907 provides in relevant part:

"Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him."

Plaintiffs contend that the damage awards in their favor should have been trebled. A plaintiff in a malicious prosecution action must elect to submit the question of exemplary damages to the jury or to have the issue of actual damages only decided by the jury and then to have any damages award trebled pursuant to the statute. *LaLone v Rashid*, 34 Mich App 193, 201; 191 NW2d 98 (1971), *lv den* 386 Mich 756 (1971). In the case at bar, plaintiffs elected to have only the question of actual damages decided by the jury. Defendant, however, argues that the court's instructions, given with plaintiffs' approval, which provided that plaintiffs were entitled to damages for "mental anguish, denial of social pleasure and enjoyments, embarassment, humiliation, and mortification", encompassed a form of exemplary damages for hurt feelings. As such, defendant contends that

the trial court's failure to treble the jury verdicts was proper.

The issue to be resolved, then, is whether damages for hurt feelings in the context of this case are compensatory or exemplary in nature. It has been held that injuries to feelings represent actual damages, compensatory in nature. *Ray v Detroit,* 67 Mich App 702, 704-705; 242 NW2d 494 (1976), *lv den* 397 Mich 828 (1976). However, the idea that such damages are strictly compensatory is belied by the fact that damages for hurt feelings are only recoverable where an injury has been maliciously or wantonly inflicted. *Inter alia, Alexander v Detroit,* 392 Mich 30, 41-43; 219 NW2d 41 (1974), *Ray, supra, Dassance v Nienhuis,* 57 Mich App 422, 434-435; 225 NW2d 789 (1975), *Kewin v Massachusetts Life Ins Co,* 79 Mich App 639, 652; 263 NW2d 258 (1977), *rev'd in part* 409 Mich 401; 295 NW2d 50 (1980), *Riggs v Fremont Mutual Ins Co,* 85 Mich App 203, 206; 270 NW2d 654 (1978). If damages for hurt feelings were strictly compensatory in nature, mere negligence which resulted in any of the varieties of injured feelings would be compensable as a normal loss item.

As the Court in *LaLone, supra,* held, I too conclude that a plaintiff is not entitled to an award encompassing hurt feelings and also to recover exemplary damages. By allowing a trebling of the jury verdicts pursuant to the statute, two enhancements of the damages awards would be permitted plaintiffs on what, in effect, is the same policy consideration. The jury would be allowed to enhance the verdict based on the vague concept of injured feelings due to defendant's outrageous conduct. Plaintiffs would also receive a second enhancement pursuant to the statute which presumably expresses the legislative determination that a

defendant should be punished for its outrageous conduct in a malicious prosecution action. Damages should bear some relationship to the harm actually committed and not be totally arbitrary, even where defendant has engaged in the most vile type of conduct. By trebling the verdict in the case at bar, after the jury has been allowed to assess damages for hurt feelings, I believe that the majority opinion ignores the primary purpose of monetary damages.

I would affirm.