STONE v. EARP.

1. EVIDENCE—POLYGRAPH TESTS.
   Admission in evidence of result of polygraph tests in suit to determine title to truck was error, although not reversible or prejudical under the circumstances, since such tests are still too much in the experimental field for courts to approve of their general use.

2. APPEAL AND ERROR—EQUITY—HEARING DE NOVO—ADMISSION OF INCOMPETENT TESTIMONY.
   Admission of incompetent proofs is of no decisive moment if competent proofs in suit in equity support decree entered, since the Supreme Court hears such cases de novo.

3. EVIDENCE—BURDEN OF PROOF.
   The burden of proof is upon the claimant in all civil cases, whether in law or chancery.

4. SAME—POLYGRAPH TESTS.
   Results of polygraph tests, whether taken by voluntary agreement, court direction or coercion, do not constitute competent evidence, yet admission of such results in evidence would not be reversible error in a chancery case, if decree entered were otherwise supported by competent evidence.

5. AUTOMOBILES—TITLE—PREPONDERANCE OF EVIDENCE—POLYGRAPH TESTS.
   Trial court's admission of results of polygraph tests of witnesses who gave conflicting testimony in suit to determine title of a truck, was not reversible error, where court had about concluded that the preponderance of the evidence was in defendant's favor before such results were admitted in evidence.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 5] 20 Am Jur, Evidence § 762.
[1, 4, 5] Physiological or psychological deception tests.   34 ALR 147, 86 ALR 616.
[2] 3 Am Jur, Appeal and Error §§ 1027, 1028.
[3] 20 Am Jur, Evidence § 135.
[6] 3 Am Jur, Appeal and Error § 883.

6. APPEAL AND ERROR—AUTOMOBILES—PAYMENT—CREDIBILITY OF
   WITNESSES.

  Decree for defendant in suit to determine title to truck is not
    disturbed, where evidence on principal issue as to whether or
    not he had paid for it was in hopeless conflict and the trial
    judge had the benefit of seeing the witnesses and watching
    them testify and Supreme Court does not have such aids in
    the determination of credibility of witnesses.

Appeal from Macomb; Spier (James E.), J. Submitted October 10, 1951. (Docket No. 75, Calendar No. 45,137.)  Decided December 3, 1951.

Bill by Garrett Stone against Vallie Earp for determination of title to dump truck and trailer. Cross bill by defendant against plaintiff for accounting under leasing agreement. Decree for defendant. Plaintiff appeals. Affirmed.

*William J. Eggenberger,* for plaintiff.

*Carroll & Gallagher,* for defendant.

SHARPE, J. This is a chancery suit in which plaintiff asks that he be decreed the legal and equitable owner of a 1948 International dump truck and Fruehauf dump trailer. Defendant filed a cross bill in which he asks for an accounting for moneys received by plaintiff in payment for the employment of the vehicles under a "lease agreement."

In September, 1949, plaintiff was associated with his brother in the business of hauling sand and gravel under the name of the Allstate Supply Company. He owned several heavy dump trucks and trailers, among them being a 1948 International dump truck and a 1948 Fruehauf trailer. Sometime prior to September 19, 1949, plaintiff had an argument with 2 of the drivers in his employ regarding wages and the number of trips that were being made, which re-

sulted in plaintiff offering to let them maintain the trucks and take the responsibility of their operation with payment to plaintiff for such use. This conversation was overheard by defendant, Vallie Earp, who subsequently offered to accept the proposition that plaintiff had offered his 2 employees.

At this time, defendant was a crane operator for Ready Mix Concrete, Inc. William L. Hendon was a son-in-law of defendant and had been employed by plaintiff's brother as a driver for the Allstate Supply Company. Plaintiff's trucks worked out of the yards of the Ready Mix Concrete, Inc. Plaintiff's equipment was usually laid off from about the first of November through the following March or April. Plaintiff was approached by defendant who informed him that if he (defendant) had a truck it would have a preference at Ready Mix Concrete, Inc., and urged plaintiff to transfer title to him so that the same could be displayed to the yard owner and the truck kept operating. After some discussion, plaintiff agreed to transfer title to defendant and put William Hendon on his payroll. Plaintiff took a lease back on this equipment. After the title was transferred, William Hendon was placed on plaintiff's payroll and drove the equipment until April, 1950. The arrangement with Earp continued until the middle of January, 1950, when William Hendon had an accident and was informed by plaintiff that there was no liability insurance.

The cause came on for trial at which time defendant claimed that he purchased plaintiff's equipment for the sum of $6,500 on September 20, 1949, which was paid at defendant's home.

During the course of the trial the court indicated he wanted lie detector tests before deciding the issues. He said:

"I am not going to decide this case until your clients take a lie detector test. This case will be adjourned until—it will be the first case on the call Tuesday, the 25th and we will keep on it until we are through."

The trial resumed and later, the following took place in the court's chambers.

"*The Court:* I will put this on the record. Both counsel are present and I want to confirm the agreement of counsel that their clients have consented voluntarily to submit to this polygraph test. They are each paying half of the expense of the test. This is $25 cash. Have you collected that?

"*Mr. Gallagher:* I have.

"*The Court:* Have you?

"*Mr. Eggenberger:* I will.

"*The Court:* You also consent to have your client answer any questions that the operator feels might aid the court in reaching a decision and having the questions and answers taken by the operator and then read in court afterwards subject to your cross-examination?

"*Mr. Eggenberger:* As far as the plaintiff is concerned it is so agreed and I will stipulate upon the same lines with Mr. Gallagher, counsel for the defendant.

"*Mr. Gallagher:* We will enter our agreement on the record and make the same stipulation.

"*The Court:* As to all those matters."

(Thereupon the polygraph tests were given in a private room, after which at 1:05 o'clock p.m. all parties returned to the courtroom.)

Alex L. Gregory, the witness called by stipulation of counsel, testified that he was a personnel consultant and conducts lie detector examinations. He stated:

"I have formed an opinion with relation to that matter and it is my opinion that Garrett Stone is

not telling the entire truth regarding the matter and that Vallie Earp has told me the truth regarding the payment of money."

At the close of the proofs, the trial court filed an opinion decreeing defendant to be the legal and equitable owner of the vehicles in question. The court's opinion contains the following:

"The polygraph tests were a definite aid to the court in this case, in supporting what appeared to be the preponderance of evidence, and in removing doubt in the court's mind as to the possibility of fraud owing to the fact all of defendant's 3 witnesses to the payment were his own immediate family.

"The court is satisfied from the testimony and the written instruments that a sale and purchase and payment in full ($6,500) took place, vesting title in the defendant."

Plaintiff appeals and urges that it was error to give consideration and weight to the opinion of the polygraph operator. In our opinion it was error to introduce in evidence the result of the tests, but such error was not prejudicial for reasons hereinafter discussed.

In *People* v. *Becker,* 300 Mich 562 (139 ALR 1171), we held that it was not error to refuse admission in evidence of the result of such tests for the reason that such tests used in ascertaining the truthfulness of a witness are still too much in the experimental field for courts to approve of their general use. We find no reason why a different rule should be followed in civil cases than in criminal cases.

Defendant urges that the use of the polygraph and resultant opinion evidence given at the trial were not necessary for decision and relies on *Central Rent-A-Car & Garages, Inc.,* v. *Franklin Mutual Ins. Co. of Illinois,* 291 Mich 578, where we said:

"This being an appeal in equity we hear the case *de novo* and, if the competent proofs establish plaintiff's right to the relief granted in the circuit court, the error, if any, in admitting incompetent testimony is of no decisive moment. The competent evidence established the alleged representations."

We are not unmindful of the fact that at the direction of the trial court, the parties agreed to submit to the tests, but whether by voluntary agreement, court direction, or coercion, the results of such tests do not attain the stature of competent evidence. In the case at bar the trial court had about concluded that the preponderance of evidence was in defendant's favor prior to the admission of such tests. This is only another way of stating that plaintiff had not maintained the burden of proof. In all civil cases, whether in law or chancery, the burden of proof is upon the claimant. Under the circumstances of this case the admission of the result of the tests in evidence, while error, was not prejudicial for reasons heretofore stated.

Plaintiff also urges that the findings, opinion and decree of the trial court are not supported by the record and are against the weight of the evidence. The principal issue in this case is whether the truck was paid for. Plaintiff claims that no money was paid, while defendant claims that the sum of $6,500 was paid by him to plaintiff in bills which he had in a box in his bedroom closet.

Plaintiff testified:

"Mr. Earp never paid me any money at any time. From September 20 on I never paid him any money, I did give him one check around the first of October for around $12 for a side mirror that had been put on by Hendon and an oil change and transmission grease that he had a bill on. The check was made out to Earp and this was after Hendon started to drive."

Joanna Stone, wife of plaintiff, testified:

"I have never received any money from Earp and never saw him pay any money to my husband. In the conferences between them there was never any discussion about paying for the truck. I have never received any money from Earp and never seen him pay any money to my husband and never saw any of the $6,500 that Earp claims he paid for the truck. In the conferences between them there was never any discussion about paying for the truck."

Defendant testified:

"That is my signature on plaintiff's exhibit 3, the title. It was signed on September 20, 1950 at a notary public's on Van Dyke. Only Mr. Stone and I were present. The lease and title were signed the same night but the lease was signed after the title was transferred. The title was transferred to me because I bought the truck and paid Stone $6,500 that I had in my home. I have had some of it since 1941. I had more than $6,500 at the time I paid Stone. I had $585 left in the box after I paid him."

Marie Earp, wife of defendant, testified:

"I know of my own knowledge that there was money paid to Garrett Stone that night. I saw the money. We had it in our bedroom closet. I think I know how much money was there. I saw the money paid to Garrett Stone. My husband had told me how much money he was going to pay. The night before he had talked to me about buying the truck and we went out and looked at several different trucks. My husband paid $6,500 for this truck. There was $6,500 in the house previous to the transaction. I saw the money in Mr. Stone's possession."

William Hendon, son-in-law of defendant, testified:

"I saw Mr. Earp go in his bedroom and come out with some money. It was a stack of bills and him

and Mr. Stone went in the kitchen and Mr. Earp counted the money out to Garrett Stone. I didn't see how much money it was. At that time I was sitting in the doorway between his kitchen and the living. The couch sits right at the door. I was not in the kitchen. I did see Mr. Earp with the money in his hand. The money was open and stacked up in a stack. I don't know how much was there. I saw Mr. Stone put the money in his pocket and his wife was sitting in the living room with the rest of us. When Mr. Earp got through counting the money he went to the door and asked was she ready to go and they both left. Stone was in the kitchen when he put his money in his pocket. I saw the money being counted but I didn't hear it. I heard some of it but not all. I didn't pay any attention."

Nell Hendon, daughter of defendant, testified:

"I saw some money in the kitchen. My father went in the bedrom and got it. After I saw the money in the kitchen Mr. Stone put it in his pocket. At that time I was sitting on the couch near the door and could see through the door into the kitchen.  *  *  *

"After the Stones left that night my father told me that he paid $6,500 for the truck. I saw my father come out of the bedrom with money in his hand and he walked out into the kitchen. Mr. Stone was standing in the door and no one else went into the kitchen. I didn't hear any discussion between Stone and Earp as I was looking at the television. It wasn't hard to watch the television and watch the cash being passed out in the kitchen. The money was counted out by my father after he put it on the table. I saw him count it but I didn't hear him count it. I don't have any idea what the bills were. My father never told me what denominations the bills were."

It is apparent that the testimony of the witnesses is in hopeless conflict, but this being an appeal in

equity we hear the case *de novo*. We do not have the benefit of seeing the witnesses and observing them as they testify in order to assist us in judging their credibility. The trial judge had such benefit. The record sustains his finding of facts.

The decree is affirmed, with costs to defendant.

REID, C. J., and BOYLES, NORTH, DETHMERS, CARR, and BUSHNELL, JJ., concurred. BUTZEL, J., did not sit.