PEOPLE v WRIGHT

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—CONVERSATIONS—TAPE RECORDINGS—
   SEARCH WARRANT—CASE PRECEDENT.

   It was not error for a trial court not to suppress a tape recording
   of a conversation between a defendant and a police narcotics
   officer because there had been a failure to obtain a search
   warrant where case precedent requiring a warrant for third-
   party electronic monitoring of conversations came after the
   recording of the conversation and was given prospective effect
   only.

2. EVIDENCE—CRIMINAL LAW—TAPE RECORDINGS—REBUTTAL TESTI-
   MONY—PROOF OF COMMISSION OF CRIME—MANIPULATION OF
   EVIDENCE.

   The admission of a taped conversation between a defendant and a
   police narcotics officer into evidence as rebuttal testimony was
   prejudicial error where the tape tended to prove the commis-
   sion of the crime itself and its introduction as rebuttal evidence
   by the prosecution was an attempt by the prosecution to
   manipulate its case for the greatest impact on the jury.

3. EVIDENCE—REBUTTAL EVIDENCE—DEFINITIONS.
   Rebuttal evidence is broadly defined as evidence introduced by

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 408, 436.
   Admissibility of sound recordings in evidence. 58 ALR2d 1024.
[2] 29 Am Jur 2d, Evidence § 269.
[3] 29 Am Jur 2d, Evidence § 250.
[4] 29 Am Jur 2d, Evidence § 535.
[5, 6] 21 Am Jur 2d, Criminal Law § 587.
   25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 16, 17, 20.
   73 Am Jur 2d, Statutes §§ 294, 295.
[7] 29 Am Jur 2d, Evidence § 831.
   Physiological or psychological truth and deception tests. 23 ALR2d
   1306.
   Admissibility of lie detector test taken upon stipulation that the
   result will be admissible in evidence. 53 ALR3d 1005.
[8] 81 Am Jur 2d, Witnesses §§ 429, 430.

one party to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same.

4. EVIDENCE—FOUNDATION—PRIOR INCONSISTENT STATEMENTS.

It is necessary to lay a foundation for proof of prior inconsistent statements.

5. CRIMINAL LAW—DELIVERY OF HEROIN—ATTEMPTED DELIVERY OF HEROIN—CONTROLLED SUBSTANCES ACT—STATUTES.

There can be no crime of attempted delivery of heroin in Michigan because the Controlled Substances Act expressly merges attempt with the completed offense (MCLA 335.304; MSA 18.1070[4]).

6. CRIMINAL LAW—GENERAL ATTEMPT STATUTE—ATTEMPTS—STATUTES.

The general attempt statute applies only where no express provision is made by law for the punishment of an attempt (MCLA 750.92; MSA 28.287).

7. EVIDENCE—LIE-DETECTOR TESTS.

Results of lie-detector tests are inadmissible as evidence.

DISSENT BY BEASLEY, J.

8. WITNESSES—CRIMINAL LAW—SURPRISE—PRESENTATION OF EVIDENCE—PRIOR INCONSISTENT STATEMENTS.

*Surprise of a witness, standing alone, should not require exclusion of the impeaching evidence which causes the surprise; no weapon is more important to effective cross-examination than surprise.*

Appeal from Calhoun, Creighton R. Coleman, J. Submitted December 7, 1976, at Grand Rapids. (Docket No. 24830.) Decided March 28, 1977.

Ronnie Wright was convicted of delivery of heroin. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John J. Rae,* Prosecuting Attorney, and *Conrad Sindt,* Assistant Prosecuting Attorney, for the people.

*Leonard Esquina, Jr.,* Assistant State Appellate Defender, for defendant.

Before: R. B. BURNS, P. J., and QUINN and BEASLEY, JJ.

R. B. BURNS, P. J. Defendant appeals his conviction by jury of delivery of heroin, MCLA 335.341; MSA 18.1070(41).

The circumstances surrounding defendant's arrest involved the alleged sale by defendant and a codefendant of seven "dime packets" of heroin to a state police trooper. The defense was mainly established through the codefendant's testimony that she was not at the residence in question, and that she did not take part in any drug sale. Defendant did not testify.

In rebuttal of this testimony, plaintiff offered into evidence a tape recording that purported to contain an on-the-scene conversation between defendant, codefendant, and the officer which tended to establish that the offense had been committed. Defense counsel timely objected on numerous grounds to the admission of this tape, and these objections are renewed on appeal.

We first note that the trial court did not err in not suppressing the tape recording for failure to obtain a warrant. *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), while validating defendant's contention, was expressly given prospective effect "and applies [only] to police conduct occurring after its release, *People v Livingston,* 64 Mich App 247; 236 NW2d 63 (1975)". *People v Jack Crawford,* 66 Mich App 738, 740; 239 NW2d 734, 735 (1976).

We agree with defendant, however, that the admission of the tape as rebuttal testimony amounted to prejudicial error on the facts of this

case. Michigan courts have traditionally forbidden the prosecution to manipulate its case for the greatest impact on the jury:

"[I]t is not proper to divide up the testimony on which the people propose to rest their case, and nothing which tends to prove the commission of the crime itself or its immediate surroundings can be classed as rebutting evidence under ordinary circumstances, if at all". *People v Quick,* 58 Mich 321, 323; 25 NW 302 (1885).

Rebuttal evidence has been broadly defined as evidence introduced "by one party to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same". *People v Utter,* 217 Mich 74, 83; 185 NW 830, 834 (1921).

It is arguable that the substance of the tape constituted proper rebuttal evidence as it introduced nothing new about the circumstances surrounding the crime and was used to impeach the testimony of the codefendant through her prior inconsistent statements as contained on the tape. However, "Michigan has long held that it is necessary to lay a foundation for proof of prior inconsistent statements". *Ebel v Saginaw County Board of Road Commissioners,* 386 Mich 598, 608; 194 NW2d 365, 369 (1972). The proper foundational format was approved in *Scholnick v Bloomfield Hills,* 350 Mich 187, 195; 86 NW2d 324, 328 (1957):

" 'The witness whose credibility is at stake must be asked as to whether he made a certain statement or statements, clearly indicating what they were, in connection with a designated matter, in such manner as to pin his attention to the proposed contradiction and give him a chance to admit, deny or explain it.' " (Citation omitted.)

The purpose of this rule "is to avoid surprise of the witness to be impeached". *People v Gunne (On Rehearing),* 66 Mich App 318, 320; 239 NW2d 603, 604 (1976).

The transcript of trial clearly reveals that plaintiff did not follow the proper procedure, and further reveals that the introduction of the tape was a complete surprise to the defense. Accordingly, we reverse the conviction.

Another of defendant's allegations of error requires elaboration because of the possibility that the question may arise on retrial and because of the advisability of calling an anomalous statutory provision to the attention of the bench and bar.

The trial judge instructed the jury that it could reach three possible verdicts: guilty of delivery of heroin; guilty of possession of heroin; or not guilty. Defense counsel timely excepted to the failure of the judge to instruct on certain other requested verdicts, among them "attempted delivery of heroin".

It is necessary to observe that there can be no crime of "attempted delivery of heroin" in Michigan. The relevant section of the Controlled Substances Act, MCLA 335.304; MSA 18.1070(4), defines "delivery" as "the actual, constructive or *attempted* transfer from 1 person to another of a controlled substance". (Emphasis added.) By the express and unequivocal language of this section, the Legislature has seen fit to merge attempt with the completed offense.

Additionally, the general attempt statute, MCLA 750.92; MSA 28.287, is inapplicable. The statute expressly recites that it only applies "when no express provision is made by law for the punishment of such attempt". In MCLA 335.304; MSA 18.1070(4) such a provision has been made; thus,

"attempted delivery" of a controlled substance is a *non sequitur.* See *People v Richard Banks,* 51 Mich App 685; 216 NW2d 461 (1974).

One further issue requires comment. Defendant now complains about the admission of polygraph evidence into the record at trial upon stipulation of the parties.

*People v Frechette,* 380 Mich 64, 68; 155 NW2d 830, 832 (1968), holds as follows: "There can be no doubt at present that in this jurisdiction the results of lie-detector tests are inadmissible." *Stone v Earp,* 331 Mich 606, 611; 50 NW2d 172, 174 (1951), was just as unmistakable in the specific context of polygraph stipulations:

"We are not unmindful of the fact that at the direction of the trial court, the parties agreed to submit to the tests, but whether by voluntary agreement, court direction, or coercion, the results of such tests do not attain the stature of competent evidence."

These cases are still the law in Michigan.

For the reason previously enumerated, prejudicial rebuttal testimony, defendant's conviction is reversed.

Quinn, J., concurred.

Beasley, J. *(dissenting).* The majority hold that it was error to admit in evidence, for the purpose of impeaching the alibi testimony of the codefendant, a tape recording of a conversation in which defendant, codefendant and the police officer participated. The holding rests upon the failure of the prosecutor to comply with the rule requiring a proper foundation before the introduction of prior inconsistent statements. *People v Gunne, (On Rehearing),* 66 Mich App 318, 320; 239 NW2d 603,

604 (1976), *Ebel v Saginaw County Board of Road Commissioners,* 386 Mich 598, 608; 194 NW2d 365, 369 (1972), *Scholnick v Bloomfield Hills,* 350 Mich 187, 195; 86 NW2d 324, 328 (1957). The purpose of this latter rule is said to be "to avoid surprise of the witness to be impeached". This holding also rests upon an inference that the prosecutor improperly manipulated its order of proofs for greatest impact on the jury.

I disagree with both reasons underlying the majority's holding; the surprise of a witness does not require a ruling that the prosecutor unfairly presented the evidence, and the facts of this case do not compel an inference that the prosecutor improperly manipulated the order of proofs.

Surprise of a witness, standing alone, does not require a ruling that the prosecutor unfairly presented the evidence. The "surprise" standard was enunciated by the case of *People v Gunne, supra* at 320:

"The purpose of the rule requiring the asking of foundational questions is to avoid surprise of the witness to be impeached. This purpose is accomplished once the questions are posed. Answers by the witness are not required. He may answer such questions to deny that prior inconsistent statements were made, or he may explain the prior statements in an attempt to nullify or lessen their impeaching nature."

The primary purpose of both cross-examination and impeachment is discovery of the truth. No weapon is more important to effective cross-examination than surprise. The situations in which the element of surprise served to reveal the truth are legion. The rule adhered to by the majority has been criticized for interfering with that pursuit of truth:

"The rule of Queen's Case [2 Brod & Bing 284 (Eng, 1820)] was long ago abrogated in England where it was first expounded but is still adhered to by most American courts. While it rests in part on the quite insecure ground that it is required by the best evidence rule, it also finds some justification on the ground of being inherently fair to the conscientious witness. Very often, however, the enforcement of the rule places a great obstacle in the way of effective cross-examination of a slippery and dishonest witness, and that fact explains its abolition in England. The English precedent should compel a modification of the rule and a more enlightened approach in this country as some decisions have recognized.

At the moment, despite these recent precedents and the example of England, most state courts continue to apply the rule of Queen's Case without much regard to considerations justifying a relaxation of the rule. But relaxation of the rigid application of the rule is encountered in some cases." 4 Jones on Evidence (6th ed), 183–185. (Citations omitted.)

Reconsideration of the rule is especially appropriate if the rule is interpreted to require exclusion of the evidence now in question. The previous testimony of the police officer had set forth in detail the time, place and parties to the alleged conversation. After that testimony, the codefendant freely denied that the conversation ever took place. Form is exalted over substance if further foundation is required regarding a tape of that very same conversation.[1]

The record before this court does not divulge the reason why the prosecutor reserved for rebuttal the tape in question. Nevertheless, this Court has the power to draw an inference of fact regarding that reason. GCR 1963, 820.1. However, I disagree with the inference drawn by the majority.

---

[1] The examination of the tape for authenticity is considered a separate matter.

The record indicates that both the introduction and the reproduction quality of the tape have been challenged on various grounds. Given these evident problems, the prosecutor may have decided that the tape should be avoided if at all possible. Such a decision would be reasonable since the tape's information would still be presented through the testimony of the police officer who participated in the taped conversation.

The factors underlying the prosecutor's decision changed when one codefendant chose to take the stand. The codefendant's testimony conflicted directly with that of the police officer; she denied that either she or her codefendant were at the place alleged by the officer. In essence, her testimony presented alibis for both herself and her codefendant. In these circumstances, it would be reasonable for the prosecutor to consider the merit of offering the tape in evidence by way of rebuttal to impeach this alibi witness. Rather than improper prosecutorial manipulation, I would consider this an appropriate effort to get at the truth.

In summary, I do not believe that under the facts of this case, there was a lack of proper foundation for admission of the tape into evidence and neither would I find improper manipulation of the order of proofs by the prosecution. But, if, as the able majority finds, precedent requires a finding of a lack of foundation for introduction of the tape into evidence, then the time has come for our Supreme Court to revisit, reconsider and reverse the ill-founded, archaic rule that prohibits trial attorneys from using the element of surprise to destroy perjured testimony.

I would vote to affirm the conviction and, therefore, must respectfully dissent.