NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0725n.06
Filed: November 24, 2008

Nos. 07-1886, 07-1888

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee/ | ) | ON APPEAL FROM THE |
| Cross-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Marious Delano Taylor, | ) | |
| | ) | |
| Defendant-Appellant/ | ) | |
| Cross-Appellee | ) | |

BEFORE: MOORE and COLE, Circuit Judges, and GRAHAM, District Judge.[*]

GRAHAM, District Judge. This is an appeal brought from a judgment of conviction and sentence entered in the United States District Court for the Western District of Michigan. Defendant-Appellant/Cross-Appellee Marious Delano Taylor ("the defendant") was convicted of one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He appeals the ruling of the district court denying his motion to suppress evidence obtained from his residence pursuant to a search warrant. The government filed a cross-appeal challenging the district court's decision that the defendant did not meet the criteria for an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). For the following reasons, the district court's denial of the motion to suppress is AFFIRMED, the

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

district court's ruling that the defendant did not qualify for an enhanced sentence under the ACCA is REVERSED, and the case is remanded for re-sentencing.

## I. History of the Case

On August 31, 2006, officers of the Grand Rapids Police Department obtained a search warrant issued by a state court judge to search the defendant's residence at 524 Coit Avenue N.E., Grand Rapids, Michigan. In the affidavit submitted in support of the warrant application, Officer Maureen O'Brien of the Grand Rapids Police Department, as the affiant, provided information obtained from a confidential informant concerning the sale of cocaine at that address. During the execution of the warrant, officers found approximately 11 grams of crack cocaine, a digital scale, $400 in a sock, and a loaded .32 caliber handgun.

On December 5, 2006, an indictment was returned charging defendant with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant was arraigned on December 15, 2006, and entered a not guilty plea. Defendant was re-arraigned on the charge when it became apparent that he had three prior felony convictions which might qualify him for career offender penalties.

On January 26, 2007, defendant filed a motion to suppress evidence seized pursuant to the search warrant, alleging that the search warrant affidavit was insufficient to show probable cause. Defendant also asserted that the affidavit contained false statements warranting an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). In an opinion and order filed on February 22, 2007, the district court denied the motion to suppress

and denied defendant's request for a *Franks* hearing. Defendant then entered into a plea agreement with the government, retaining his right to appeal the ruling on the motion to suppress. On March 1, 2007, defendant entered a plea of guilty to the indictment.

In paragraph 44 of the presentence investigation report, the probation officer determined that defendant was an armed career criminal subject to an enhanced sentence under the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.4(b)(3)(A), based on his previous convictions for two violent felony offenses, specifically: (1) a 1995 conviction for assault with intent to commit a felony (defendant was seventeen years old at the time of the offense, but was prosecuted as an adult); and (2) a 2002 conviction for felonious assault; and a previous conviction for a serious drug offense, specifically: a 2002 conviction for the attempted delivery of less than 50 grams of cocaine with a second offense notice. This determination resulted in a guideline sentencing range of 188 to 235 months.

In a sentencing memorandum filed on June 21, 2007, defendant objected to his designation as a career offender. He argued that the 2002 attempted delivery offense was not a "serious drug offense" as defined in 18 U.S.C. § 924(e)(2)(A)(ii) because that definition does not specifically include attempt offenses. He also argued that the 2002 attempt offense did not qualify because that offense carried a maximum of ten years only by reason of the second offense enhancement provision. He further contended that the 2002 attempt conviction and the 2002 felonious assault conviction could not be counted as separate offenses because they were consolidated for purposes of sentencing. Finally, he argued that the 1995

3

assault conviction should not be counted because, if the charge had been resolved in a juvenile delinquency proceeding, as permitted under Michigan law, rather than in the adult prosecution which actually occurred, the conviction would not qualify under the ACCA because no dangerous weapon was involved in the offense.

At the sentencing hearing held on June 28, 2007, the district court agreed with the defendant's argument that attempt offenses do not fall within the ACCA's definition of "serious drug offense" and concluded that the ACCA enhancement was not applicable. In light of this ruling, the district court did not specifically address defendant's argument that the second offense enhancement which raised the 2002 drug conviction to an offense with a maximum term of imprisonment of ten years should not be considered. However, the district court did summarily reject defendant's arguments that the two convictions in 2002 which were consolidated for purposes of sentencing should be treated as a single conviction, and that his 1995 conviction for an offense committed while a juvenile should not be counted.

As a result of the court's ruling that the ACCA did not apply, the defendant's sentencing range under the advisory guidelines was determined to be 110 to 120 months, based on a total offense level 25 and a criminal history category VI. Defendant was sentenced to a term of incarceration of 120 months, to be served concurrently with a state court sentence defendant was then serving, and was further sentenced to a term of supervised release of three years and a fine of $1,500.

## II. Motion to Suppress Search

### A. Validity of the Search Warrant

4

Defendant appeals the district court's ruling denying his motion to suppress evidence obtained during the search of his residence. The district court's factual findings on a motion to suppress are reviewed for clear error and its legal determinations are reviewed *de novo*. *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008). A finding of probable cause is a legal conclusion that is also reviewed *de novo*. *Id*.

"Probable cause is described as a fair probability–not an absolute certainty–that evidence of a crime will be found at the location." *Id*., citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This court must review the totality of the circumstances "to make a practical, commonsense," not hyper-technical, determination of whether probable cause is present. *Gates*, 462 U.S. at 238. Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238-39.

In her affidavit of August 31, 2006, Officer O'Brien, a police officer of thirteen years who had been assigned to the Vice Unit for the previous eleven years, described her experience with drug cases. JA 23-24. The affidavit further states:

> In this regard your affiant met with a reliable and credible informant 1523 who indicated from personal knowledge that cocaine could be purchased at the above described premises. This informant from personal knowledge is familiar with the characteristics of cocaine, [and] the manner in which cocaine is used and sold in the community. When your affiant met with the informant, the informant directed your affiant to the above described premise[s]. The informant had been at the above described premises within the last 48 hours and observed a quantity of cocaine being sold there. The cocaine as described by the informant is being sold for various amounts of US currency.

5

> The cocaine is easily concealed on or about the person. When the informant left the premise[s], there were additional amounts of cocaine on the premises being offered for sale. The person(s) selling the cocaine is/are described as: B/M, Marious Taylor, 5'9"/165, 4-25-78.
>
> Your affiant has known the informant one month. The informant has made 4 controlled purchases of controlled substances. All of these controlled purchases tested positive for the controlled substance that was purchased. The informant has supplied information on 5 drug traffickers in the community said information having been verified by your affiant through police records, personal observations, other police officers, and other reliable informants.

JA 24.

Defendant argued in his motion to suppress that the information provided by the informant was not corroborated, and therefore the reliability of the informant was not established. The district court rejected defendant's arguments, holding that the issuing judge had the information necessary to consider the confidential informant's veracity, reliability and basis of knowledge.

The totality of the circumstances approach requires an assessment of the adequacy of all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of a confidential informant. *Gates*, 462 U.S. at 238. The affidavit "need not reflect the direct personal observations of a law enforcement official and may be based on a confidential informant's hearsay, so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000)(citing *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

6

Corroboration of an informant's tip through the officer's independent investigative work can be a critical factor in some cases in determining whether an affidavit based on a confidential informant's tip provides a substantial basis for finding probable cause, such as where the affidavit is merely a boilerplate form. *See United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). However, "an affidavit is not insufficient merely because ... every statement is not corroborated." *Martin*, 526 F.3d at 936-37 (noting that *Weaver* "was never intended to set a stricter standard than that established in *Gates*"); *see also United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005)(independent corroboration of an informant's story is not necessary to a determination of probable cause). The information substantiating an informant's reliability need not be obtained from a source unrelated to the confidential informant, such as an independent police investigation or a second confidential informant, "but may be any set of facts that support the accuracy of the information supplied by the informant." *United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005); *see also McCraven*, 401 F.3d at 697 ("[W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form.").

Sixth Circuit precedent "clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001); *see United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000)(en banc)(noting that affiant could attest "with some detail" that the informant provided reliable information in the past); *United States v. Smith*,

7

182 F.3d 473, 483 (6th Cir. 1999)("[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required.").

Here, the affidavit stated that Officer O'Brien had known the informant for one month. Although the informant was not named in the affidavit, this was not required to establish the informant's reliability. The informant was not an anonymous source whose statements required independent corroboration, but rather was a person known to the affiant officer. *See May*, 399 F.3d at 825 ("A person known to the affiant officer, even though not named in the affidavit, is not 'an anonymous informant' in the sense referred to in cases where the identity of the informant is known to no one."). Since the informant's identity was known to Officer O'Brien and the informant would be subject to prosecution for making a false report, the informant's statements "are thus entitled to far greater weight than those of an anonymous source." *Id*. at 824-25.

Officer O'Brien further stated in the affidavit that the informant had made four controlled purchases of controlled substances, all of which tested positive for the controlled substance purchased. Officer O'Brien also stated that the informant had supplied information on five drug traffickers in the community, "said information having been verified by your affiant through police records, personal observations, other police officers, and other reliable informants." JA 24. These statements are sufficient to establish the reliability of the informant. *See Martin*, 526 F.3d at 937 (statement in affidavit that confidential informant was a known person who previously provided information that resulted in seizure of illegal controlled substances was

8

sufficient to establish the informant's reliability); *May*, 399 F.3d at 826 (noting that affidavit which stated only that the "cooperating source has provided assistance in unrelated drug investigation cases" was sufficient); *Greene*, 250 F.3d at 480 (holding that "the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable").

In addition, the fact that the police had utilized the informant in four controlled purchases further indicates the credibility and reliability of the informant, since the police would not have continued to utilize the informant if the informant was not credible and reliable. *See United States v. Fowler*, 535 F.3d 408, 414 (6th Cir. 2008). The fact that Officer O'Brien was able to verify the informant's information concerning five other drug traffickers by other means provides a further basis for the reliability of the informant's information. *See id.* There is sufficient information in the affidavit to permit the issuing judge to determine the reliability and credibility of the informant.

Defendant also argues that the affidavit is insufficient to establish that drugs would be found in the residence. In his motion to suppress, defendant noted that there was no indication how the informant came to be at defendant's residence, no information as to the form of cocaine that was being sold, the amount sold, or the purchase price, and no indication that the informant had purchased cocaine at the residence. However, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. An affidavit "is not insufficient

9

merely because it lacks explicitness of detail[.]" *Martin*, 526 F.3d at 937.

In this case, the affidavit states that the informant stated from personal knowledge that cocaine could be purchased at the residence. The affidavit indicated that the informant, based on personal knowledge, was familiar with the characteristics of cocaine and the manner in which it is used and sold in the community. The informant's familiarity with cocaine is corroborated by the information that the informant had made four controlled purchases of controlled substances which had tested positive for the controlled substance purchased.

The affidavit revealed that the informant had been in the residence within the past forty-eight hours and had observed cocaine being sold there for various monetary amounts. As this court stated in *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986), "there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than [the informant's] direct viewing of" cocaine in defendant's house. *Id*. at 878; *see also Gates*, 462 U.S. at 234 (stating that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitled his tip to greater weight"). The informant also stated that there were still additional amounts of cocaine remaining at the residence when the informant left the premises, thus supporting the probability that cocaine would be found during the requested search. The facts related in the affidavit are sufficient to establish probable cause to search the residence.

B. Denial of a *Franks* Hearing

Defendant also argues that the district court should have granted his motion for a *Franks* hearing. In considering the district court's denial of a *Franks* hearing, the district court's factual findings are reviewed for clear error and its conclusions of law are reviewed *de novo*. *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001). A defendant is entitled to a hearing to challenge the validity of a search warrant if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and ... the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-156; *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997). If, when the statements which were allegedly made falsely or with reckless disregard for the truth are set to one side, "there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-172. The remainder of the affidavit establishes probable cause if it "provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at" the stated location. *Graham*, 275 F.3d at 504.

Defendant submitted an affidavit with his motion to suppress, stating that he was not present at the residence for three days prior to the signing of the search warrant affidavit and had not sold drugs from the premises during that time period, and that his weight was 220 pounds, not 165 pounds. He summarily alleged that the informant's statements about observing cocaine sales at the residence during the 48 hours preceding the warrant application and

11

the fact that additional quantities of cocaine were present when the informant left the residence were false. The district court concluded that even assuming that defendant's statement about not being present at the residence was true, that did not necessarily render untrue the statement about defendant being described as the person selling cocaine. The district court further noted that even assuming that the informant's statements were untrue, defendant made no showing that Officer O'Brien knew or should have known that the statements were false. The district court denied defendant's motion for a *Franks* hearing.

Even if it is assumed that the defendant was not at the residence during the relevant time period, the information provided by the informant is not necessarily false. The affidavit states that the informant "observed a quantity of cocaine being sold there." JA 24. The affidavit stated that "The person(s) selling the cocaine is/are described as: ... Marious Taylor." *Id*. It does not state that defendant was personally selling the cocaine while the informant was at the residence, and, by referring to "person(s)" in the plural, the statement is broad enough to support an inference that the informant may have observed another person selling cocaine as defendant's agent on that occasion. Even if the informant mistakenly or deliberately misidentified the person selling cocaine at the residence as being the defendant and the reference to the defendant is deleted, the information about the informant seeing cocaine being sold at the residence remains intact.

In addition, the district court correctly observed that the defendant offered no explanation as to why Officer O'Brien knew or

12

should have known that the statement was false. "Warrant affidavits carry with them 'a presumption of validity,' and 'the challenger's attack must be more than conclusory' and must allege 'deliberate falsity or reckless disregard [on the part] *of the affiant*, not of any nongovernmental informant.'" *United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007)(quoting *Franks*, 438 U.S. at 171 (emphasis added)). Since defendant proffered no evidence that Officer O'Brien knew or should have known that the information identifying defendant as a seller of cocaine at the residence was false (assuming that it was), he was not entitled to a *Franks* hearing on that issue.

C. *Leon* Good-Faith Exception

The government argues that even assuming that the search warrant affidavit was deficient, the search should be upheld under the good-faith exception to the warrant requirement announced in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that the exclusionary rule should not bar "admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Leon*, 468 U.S. at 905. The relevant question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 922 n. 23.

*Leon* identified four situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the search warrant is issued on the basis of an affidavit that the affiant knows, or is reckless in not knowing, contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a

13

rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable, or where the warrant application was supported by nothing more than a "bare bones" affidavit; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *See United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). The first two exceptions are not at issue in this case.

The standard for determining whether an affidavit is "so lacking in indicia of probable cause" as to render a belief in its existence unreasonable is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place. *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)(en banc). "Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good-faith' reliance." *Washington*, 380 F.3d at 241. A "bare bones" affidavit "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998)(quoting *Weaver*, 99 F.3d at 1378).

The affidavit in the instant case was not a "bare bones" affidavit. The affidavit did more than simply state suspicions, or conclusions; it provided some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. The affidavit included information that an informant who had personal knowledge about the characteristics of cocaine and the manner in which it is used and sold, and who had participated in controlled

14

purchases of controlled substances which tested positive for the substances purchased, had personally observed cocaine being sold at the defendant's residence within the forty-eight hours preceding the issuance of the warrant. The affiant also stated that there was additional cocaine being offered for sale at the residence when the informant departed. The facts established a nexus between the illegal activity and the premises to be searched, and "were not so vague as to be conclusory or meaningless." *Carpenter*, 360 F.3d at 596. Since the informant had provided reliable information to the police in the past concerning five other drug traffickers, Officer O'Brien was justified in believing that the informant's information in this case was credible and reliable. The *Leon* good-faith exception applies in this case.

We hold that the district court did not err in denying defendant's motion to suppress evidence.

### III. Applicability of the Armed Career Criminal Act
#### A. 2002 Drug Conviction as a Qualifying Offense

The government appeals the district court's ruling that defendant's previous conviction for attempted delivery of less than 50 grams of cocaine did not qualify as a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii) for purposes of imposing the enhanced penalty under the ACCA. In the case of a defendant who is convicted of an offense under 18 U.S.C. § 922(g), the ACCA requires the imposition of an enhanced penalty of not less than fifteen years incarceration where the defendant has three previous qualifying convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1).

15

The term "serious drug offense" is defined in part as:

an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii).

The district court agreed with the defendant's argument that attempt offenses in general do not fall within the ACCA's definition of "serious drug offense." JA 165-67. However, it is unnecessary to reach that issue here, because the record reveals that defendant's prior conviction was for an offense "involving ... distributing ... a controlled substance."

This court reviews *de novo* the district court's decision regarding the applicability of the ACCA. *United States v. Amos*, 501 F.3d 524, 526 (6th Cir. 2007). The government bears the burden of establishing that defendant's prior convictions qualify as ACCA predicates. *See United States v. Goodman*, 519 F.3d 310, 316 (6th Cir. 2008).

In determining whether the defendant's prior conviction qualifies as a predicate offense under the ACCA, "we use a categorical approach, looking 'only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions' to determine whether a sentence should be enhanced." *United States v. Flores*, 477 F.3d 431, 434 (6th Cir. 2007)(quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). However, in cases where the statutory definition is ambiguous and the categorical approach is not determinative, this court may also refer to "the terms of the charging document, the terms of a plea

16

agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *see also Goodman*, 519 F.3d at 317; *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006).

Defendant was originally charged by information filed on May 30, 2002, in the Circuit Court of Ottawa County, Michigan, with the offense of delivery of less than 50 grams of cocaine in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv), an offense punishable by imprisonment of up to 20 years. Defendant was also charged with a second offense notice under Mich. Comp. Laws § 333.7413(2), which had the effect of doubling the potential term of incarceration otherwise applicable to the underlying offense to a maximum term of 40 years.

Defendant was later charged by information filed on August 5, 2002, with Count 2, the offense of attempt to deliver less than 50 grams of cocaine in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv) and Mich. Comp. Laws § 750.92, the general attempt statute. The potential term of incarceration under the general attempt statute is a period of up to five years, doubled to ten years in defendant's case by the second offense notice.

At the plea proceedings on August 5, 2002, the prosecutor indicated that Count 1 in the original information would be dismissed, and that defendant would be pleading guilty to Count 2 and the second offense notice. The prosecutor further stated that this offense "is a five-year felony" and that the second-offense notice would result in a double penalty. JA 111-12. Defendant was

17

sentenced to a term of imprisonment of 23 to 120 months. The judgment referred to § 333.7401(2)(a)(iv) and § 333.7413(2). However, it did not refer to § 750.92. Thus, there is some ambiguity in the record as to the exact statutory basis of defendant's conviction.

Considering first the relevant drug provisions, Michigan law provides that "a person shall not ... deliver ... a controlled substance[.]" Mich. Comp. Laws § 333.7401(1). Section 333.7401(2)(a)(iv) establishes the penalty for a violation of § 333.7401(1) where the offense involved a Schedule 1 or 2 controlled substance in an amount less than fifty grams, which includes a term of incarceration of up to twenty years. As used in § 333.7401(1), the term "deliver" or "delivery" means "the actual, constructive, or attempted transfer from 1 person to another of a controlled substance[.]"[1] Mich. Comp. Laws § 333.7105(1). Since the definition of "deliver" includes "attempted transfer," Michigan courts have held that under § 333.7401, there is no such offense as "attempted delivery" of a controlled substance; any attempt is subsumed under the crime of delivery itself. *See People v. Marji*, 447 N.W.2d 835, 838 (Mich.Ct.App. 1989); *Wayne County Prosecutor v. Detroit Recorder's Court Judge*, 442 N.W.2d 771, 773 (Mich.Ct.App. 1989); *People v. Wright*, 253 N.W.2d 739, 740-41 (Mich.Ct.App. 1977). Thus, if § 333.7401 is considered to be the statutory provision underlying defendant's attempt conviction, then that

---

[1] This definition is similar to definitions found in the federal drug laws. "The term 'distribute' means to deliver ... a controlled substance[.]" 21 U.S.C. § 802(11). "The terms 'deliver' or 'delivery' mean the actual, constructive, or attempted transfer of a controlled substance[.]" 21 U.S.C. §802(8).

18

conviction would qualify as a delivery offense by definition under Michigan law, and would also constitute an offense "involving ... distributing ... a controlled substance" under the ACCA.

However, the charging document also refers to § 750.92.[2] This statute creates a distinct substantive offense. *People v. Thousand*, 631 N.W.2d 694, 702 (2001). The elements of the general attempt offense under § 750.92 are: (1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense. *Id*. at 701.

Assuming *arguendo* that defendant's conviction was for an offense under § 750.92, that general provision is arguably broad enough to encompass "some offenses that meet the ACCA's definition of" a "serious drug offense" and "some that do not[.]" *See United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005). In such circumstances, we may consider the "transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16.

The record in this case, JA at 125-126, contains a transcript

_____

[2] Section 750.92 applies only "when no express provision is made by law for the punishment of such attempt." § 750.92; *Wayne County Prosecutor*, 442 N.W.2d at 772. Because § 333.7401(2)(a)(iv) specifically provides a different punishment for an attempted delivery of a controlled substance, the general attempt statute is technically inapplicable to an offense under that section. *See Wright*, 253 N.W.2d at 741 (rejecting § 750.92 as a basis for instructing the jury on attempted delivery of heroin as a lesser included offense); *see also* Mich. Comp. Laws § 333.7407a (an attempt to violate the drug laws  is punishable by the penalty for the crime which the defendant attempted to commit). It is possible that the prosecution offered a plea agreement under the general attempt statute, even if erroneously, because defendant was only willing to plead guilty to an offense which entailed a lower penalty than the original charge.

19

of the plea proceedings which includes the following exchange:

THE COURT: Tell me the facts that make you guilty.

THE DEFENDANT: Well, this lady came to the house and–

THE COURT: Did you sell her some cocaine?

THE DEFENDANT; Yes, I did.

THE COURT: And whose house was it?

THE DEFENDANT: It wasn't at a residence.  It's like she came to the house, and my girlfriend's mother was at the house, so I told her to meet me down the street.  And it–so it was on 16th Street, at some little store, where you buy beer and stuff.

THE COURT: Did this delivery of cocaine to this other person take place in the City of Holland on or about June 14 of 1999?

THE DEFENDANT: Yeah.  I'm not sure exactly.[3]

&#42; &#42; &#42;

THE COURT: Mr. Taylor, the Court determines your plea is voluntarily made, that the crime was committed, that you did commit the crime, [and] therefore, accepts your plea of guilty.

In this exchange, defendant admitted to actually delivering cocaine.  The plea colloquy establishes that the offense of conviction was an offense "involving ... distributing ... a controlled substance" under the ACCA.

Defendant also argued before the district court, and now argues on appeal, that his 2002 drug conviction was not a "serious drug offence" because it was not an offense "for which a maximum

---

[3] Presumably the defendant's uncertainty related to the date or location of the transaction; he did not object in any way to the court's characterization of the transaction as a delivery.

20

term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii). As previously stated, defendant entered a guilty plea to Count 2, which charged him with a violation of § 333.7401(2)(a)(iv) and § 750.92, the general attempt statute, under which the maximum penalty was five years incarceration. However, the defendant also pleaded guilty to the second offense notice, which rendered him subject to an enhanced penalty of ten years pursuant to § 333.7413(2). He was sentenced on September 3, 2002, to a term of imprisonment of 23 to 120 months.

Defendant argues that the enhancement provision, which elevated his maximum sentence from five years to ten years due to a prior conviction, should not be considered for purposes of meeting the ten-year threshold under the ACCA. This argument is foreclosed by the recent decision of the Supreme Court in *United States v. Rodriquez*, 128 S.Ct. 1783 (2008). In *Rodriquez*, the Supreme Court held that the "maximum term of imprisonment of ten years or more ... prescribed by law" referred to in § 924(e)(2)(A)(ii) included any recidivist enhancements provided for under state law. *Id*. at 1787-93. The Court noted that "an offense committed by a repeat offender is often thought to reflect greater culpability and thus to merit greater punishment" and "portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation." *Id*. at 1789. The Court rejected the argument that offenses that are not really serious will be included as "serious drug offenses," noting that since Congress presumably thought that if state lawmakers provide for a crime punishable by ten years' imprisonment, "the lawmakers

21

must regard the crime as 'serious,' and Congress chose to defer to the state lawmakers' judgment." *Id*. at 1790. The Court held that the "maximum term of imprisonment ... prescribed by law" for the state drug convictions "was the 10-year maximum set by the applicable recidivist provision." *Id*. at 1793.

Defendant's previous conviction for an offense involving distributing a controlled substance, enhanced by his prior conviction to a maximum term of incarceration of ten years, satisfies the definition of "serious drug offense" under the ACCA.[4] The district court erred in holding that defendant's prior drug conviction did not qualify as a "serious drug offense" and this case must be remanded for re-sentencing. The defendant raised other objections before the trial court concerning his status under the ACCA which would presumably be repeated upon re-sentencing. These objections have been briefed by the parties on appeal, and in the interest of judicial economy, we will address these issues as well.

B. Prior Convictions on Different Occasions

In order to constitute "three previous convictions," the offenses must be "committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1). Defendant argues that the 2002 drug conviction and the 2002 felonious assault conviction cannot be counted as two separate convictions because they were consolidated

---

[4] The government also argues that defendant should have been charged under the more specific attempt provision applicable to drug offenses found in Mich. Comp. Laws § 333.7407a, which provides that an attempt is punishable by the penalty for the crime which the defendant attempted to commit. However, since the enhanced penalty which the defendant actually received as a recidivist satisfies the ACCA, it is not necessary to address this argument.

22

for purposes of sentencing. The information in the drug case charges that defendant committed the offense on or about June 14, 1999. The transcript of the plea proceeding reveals that the felonious assault charge stemmed from defendant assaulting two victims with a knife on November 12, 2001. Offenses are considered distinct criminal episodes if they "occurred on occasions different from one another." *Martin*, 526 F.3d at 939 (quoting *United States v. Roach*, 958 F.2d 679, 684 (6th Cir. 1992)). Here, the offenses occurred on different occasions.

The fact that these two offenses were consolidated for sentencing purposes does not undermine their status as separate convictions under the ACCA. As this court has noted, § 924(e)(1) "imposes no conditions as to the timing of the convictions." *United States v. Hayes*, 951 F.2d 707, 709 (6th Cir. 1991)(when it is clear that the defendant's prior convictions involved separate criminal episodes, § 924(e)(1) does not require the convictions to have been adjudicated separately). "The relevant factor for determining the number of predicate offenses under the ACCA is not the date of conviction for those predicate offenses, but the date that the defendant committed the offense for which he is subsequently convicted." *Roach*, 958 F.2d at 683. The fact that the offenses were consolidated for sentencing or for concurrent sentences is immaterial for ACCA enhancement purposes, so long as the separate offenses occurred at different times and/or places. *Martin*, 526 F.3d at 939 (citing *United States v. Warren*, 973 F.2d 1304, 1310 (6th Cir. 1992)).

Defendant argues that the standard in the Sentencing Guidelines for computing a defendant's criminal history category

23

should also be applied in determining whether there are three separate convictions under the ACCA. Under recently amended U.S.S.G. § 4A1.2(a)(2)(2007), sentences are classified as separate if they were imposed for crimes that were separated by an intervening arrest. This argument was recently rejected in *United States v. Bailey*, 264 Fed. App'x 480, 483-84 (6th Cir. Feb. 14, 2008)(declining to apply the methods for calculating criminal history under the Guidelines in determining whether offenses are distinct under the ACCA, and noting that the Sentencing Commission cannot alter a statute such as the ACCA by changing the Guidelines). *See also James v. United States*, 217 Fed. App'x 431, 440-41 (6th Cir. Feb. 12, 2007)(rejecting argument that lack of intervening arrest mandated finding that offenses were not committed on different occasions); *United States v. Brady*, 988 F.2d 664, 666 (6th Cir. 1993)(en banc)(finding that offenses were committed on different occasions even though defendant was not arrested between the two offenses); *Warren*, 973 F.2d at 1310 (consolidation of offenses for sentencing immaterial under the ACCA, even though such consolidation could be relevant under the Sentencing Guidelines).

The district court did not err in rejecting defendant's argument that the 2002 convictions were not for separate offenses.

D. 1995 Assault Conviction

Defendant argues that his 1995 assault conviction does not constitute a "violent felony" under the ACCA. The term "violent felony" means "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that

24

would be punishable by imprisonment for such term if committed by an adult," where the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  18 U.S.C. § 924(e)(2)(B)(i).

Defendant does not dispute that he was charged as an adult with unarmed assault with intent to rob in violation of Mich. Comp. Laws § 750.87, a felony with a maximum term of imprisonment of ten years, nor does he dispute that he was sentenced as an adult to eight months incarceration.  Rather, defendant argues that since his charge could have been resolved as a juvenile proceeding under Mich. Comp. Laws § 712A.2d,[5] his conviction was akin to a juvenile delinquency determination, which would require the use of a weapon to qualify as an ACCA predicate offense.

Regardless of whether defendant could have been prosecuted as a juvenile, he was in fact tried, convicted, and sentenced as an adult.  The definition of "violent felony" is in the disjunctive, requiring either that the crime be punishable by imprisonment for a term exceeding one year, or that it be a juvenile delinquency charge involving the use of a firearm, knife or destructive device.  Since defendant was convicted and sentenced as an adult for a crime punishable by imprisonment for a term exceeding one year, this conviction qualifies as a conviction for purposes of the ACCA enhancement.  *See United States v. Spears*, 443 F.3d 1358, 1360-61

---

[5] Mich. Comp. Laws § 712A.2d(7) provides that where the juvenile defendant is tried as an adult, the "conviction shall have the same effect and liabilities as if it had been obtained in a court of general criminal jurisdiction."  Following a judgment of conviction, the judge may impose a juvenile disposition, an adult sentence, or a blended sentence.  Mich. Comp. Laws §§ 712A.2d(8) and 712A.18(1)(n).

(11th Cir. 2006)(rejecting defendant's argument that proof of use of one of the specified weapons was required because he was seventeen years old when he committed the offense, where defendant was tried and convicted as an adult); *United States v. Lender* 985 F.2d 151, 156 (4th Cir. 1993)("[I]f the state prosecutes an individual as an adult, as it did here, the first part of the 'violent felony' definition applies; if the state prosecutes as a juvenile, then the second part applies."). As the court in *Lender* noted, Congress has chosen to incorporate state law, "letting states decide at what point adult treatment for a particular offense is indicated[,]" and "the prosecuting jurisdiction's determination of whether an individual is prosecuted as a juvenile or an adult must be respected by later sentencing courts." 985 F.2d at 156-57.

Because the State of Michigan determined that defendant should be tried and sentenced as an adult for an offense punishable by imprisonment for a term exceeding one year, defendant's 1995 conviction satisfies the definition of "violent felony" even though defendant could have been tried as a juvenile.

## IV. Conclusion

In accordance with the foregoing, the district court's ruling on the motion to suppress evidence is AFFIRMED. Since the record establishes that defendant, at the time of sentencing, had three previous convictions which qualified as predicate offenses under the ACCA, the district court erred in refusing to sentence defendant as an armed career criminal. The sentence previously imposed is VACATED, and the case is REMANDED for re-sentencing in accordance with the ACCA.

26